**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE DEMOCRATIC PARTY OF NJ, INC.,
*organized as the* NEW JERSEY
DEMOCRATIC STATE COMMITTEE,

  *Plaintiff*,

  v.

JAMES DEVINE, LISA MCCORMICK,
"NJDEMS.COM", NEW JERSEY
DEMOCRATIC PARTY A NJ NONPROFIT
CORPORATION, JOHN AND JANE DOES 1-
20, AND XYZ CORPORATIONS 1-20,

  *Defendants*.

Civil Action No. 22-01268

**OPINION**

**John Michael Vazquez, U.S.D.J.**

  This case concerns Defendants' alleged unauthorized use of Plaintiff's trademarks on a mailer that Defendants created and distributed to voters before the 2021 New Jersey general election.  Currently pending before the Court is a motion to dismiss Plaintiff's Second Amended Complaint by Defendants James Devine, Lisa McCormick, NJDEMS.com, and New Jersey Democratic Party A NJ Nonprofit Corporation (collectively, "Defendants").  D.E. 20-1.  Defendants also make a motion to strike.  D.E. 20-1.  The Court reviewed the submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R.

---

[1] Plaintiff's Second Amended Complaint will be referred to hereinafter as "SAC" (D.E. 16).  Defendants' brief in support of its motion to dismiss the complaint will be referred to hereinafter as "Def. Br." (D.E. 20-1); Plaintiff's brief in opposition to Defendants' motion to dismiss the complaint will be referred to hereinafter as "Pl. Opp. Br." (D.E. 22).  Defendants' reply brief will be referred to hereinafter as "Def. Reply." (D.E. 23).

Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated below, Defendants' motion to dismiss

Count Six and motion to strike are **DENIED**, and Defendants' motion to dismiss Counts One,

Two, Three, Four, and Five is **GRANTED**.

## I.    FACTUAL BACKGROUND[2]

Plaintiff is the New Jersey Democratic Party Inc., organized as the New Jersey Democratic

State Committee ("NJDSC"), the sole statewide committee authorized to represent the Democratic

Party in New Jersey under state law.  SAC ¶¶ 8, 22.  Defendants Devine and McCormick

("McCormick") are New Jersey residents, domestic partners, and co-owners and operators of the

website NJDEMS.com.  *Id.* ¶¶ 9–11.  NJDEMS.com is a website that was registered on March 20,

2009, and has New Jersey listed as the "home state" under "Registrant Contact Information."  *Id.*

¶ 12 (citing Exhibit B).  New Jersey Democratic Party A NJ Nonprofit Corporation ("NJDP Inc.)

is a non-profit corporation with a registered office in New Jersey, and Devine is the registered

agent for, and one of the trustees and/or officers of, this nonprofit corporation.  *Id.* ¶ 16.

Through various avenues of communication, including the website that

Plaintiff owns and operates—NJDEMS.org—Plaintiff has adopted a platform and endorsed

candidates to communicate to voters that it has determined that the election of those candidates

would benefit Plaintiff's goals.  *Id.* ¶ 25.  This included endorsing certain Democratic candidates

for political office in the 2021 New Jersey general election ("2021 Election"), as well as other

upcoming election cycles.  *Id.*

Plaintiff alleges that in October 2021, in the days leading up to in-person voting for the

2021 Election, and after the start of the mail-in voting period, Defendants sent an unsolicited

---

[2] The factual background is taken from Plaintiff's Second Amended Complaint, D.E. 16.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in a complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

political mailer (the "Mailer") to New Jersey residents that was intended to deceive voters into believing that the candidates depicted on the Mailer were endorsed or supported by Plaintiff. *Id.* ¶ 1. The Mailer was sent to Union County Residents, primarily in the Borough of Roselle. *Id.* ¶¶ 31–32. One side of the Mailer depicted a picture of Governor Phil Murphy and Lieutenant Governor Sheila Oliver (who were running for re-election), as well as a photograph of three candidates running for the Board of Education in Roselle: Gisselle Bond, Yessica Chavez, and France Cortez. *Id.* ¶ 33 (citing Exhibit A). Along the bottom, it read: "Paid for by NJDEMS.COM," "New Jersey Democratic Party," and "Not authorized by any candidate or committee." *Id.* ¶ 35. On the other side, the Mailer included photographs of the same five individuals, with the text, "Please be sure to vote Column 1 for school board & Column A all the way from Governor on Down!," "Gisselle Bond, Yessica Chavez, & Frances Cortez are the best candidates for Roselle Schools!" *Id.* ¶¶ 36–37.

Plaintiff claims that the Mailer, which featured the terms "NJDEMS" and "New Jersey Democratic Party," strongly implied that Plaintiff endorsed or supported the Board of Education candidates, just as Plaintiff had endorsed Governor Murphy and Lt. Governor Oliver in the upcoming election. *Id.* ¶¶ 1, 34. But Plaintiff did not endorse the school board candidates. *Id.* ¶ 34. Plaintiff continues that Devine and McCormick have an extensive history of similar conduct and provide numerous specific examples. *Id.* ¶¶ 58–81.

## II.    PROCEDURAL HISTORY

On October 22, 2021, Plaintiff filed a Complaint in the Superior Court of New Jersey, alleging one count of civil conspiracy. D.E. 1-1. The state court temporarily enjoined Defendants from "creating and publishing or transmitting political flyers, communications or advertisements which include or imply endorsement or authorization by [Plaintiff]." D.E. 1-3, 1-9, 1-12.

Plaintiff filed its First Amended Complaint ("FAC") on March 8, 2022, adding five additional claims.  D.E. 1-19.  Defendants then removed the action to this Court and moved to dismiss the FAC.  D.E. 1, 4.  On April 11, 2022, the Court administratively terminated the motion to dismiss and ordered that Plaintiff file an amended complaint.  D.E. 15.  On May 2, 2022, Plaintiff filed its Second Amended Complaint ("SAC").  D.E. 16.  In the SAC, Plaintiff asserted the following claims: (1) Count 1, civil conspiracy; (2) Count 2, a violation of the Anticybersquatting Consumer Protection Act ("ACPA"); (3) Counts 3 through 5, unfair competition claims pursuant to the Lanham Act, New Jersey statutory law, and common law, respectively; and (4) Count 6, a violation of New Jersey's corporate name statute.  The current motion followed.

## III.    LAW AND ANALYSIS

Defendants first argue that Plaintiff's SAC should be dismissed as an impermissible attempt to constrain Defendants' First Amendment right to freedom of speech.  Defendants next argue that the Court should strike the SAC under Federal Rule of Civil Procedure 12(f) on the ground that it contains immaterial, impertinent, redundant, and scandalous statements.  Defendants then contend that Plaintiff's unfair competition, cybersquatting, and conspiracy claims (Counts One through Five) fail to state a claim for relief.  Defendants continue that Plaintiff's violation of the state corporate name statute likewise fails.  Lastly, Defendants contend that the SAC should be dismissed because of laches.  The Court first examines the First Amendment argument before addressing the Rule 12(f) motion to strike and Rule 12(b)(6) motion to dismiss arguments.

### A.  First Amendment

Defendants contend that Plaintiff's Lanham Acts claims are barred by the First Amendment.  Defendants argue that the speech at issue is political, rather than commercial, and

that such speech is therefore (1) not regulated by the Lanham Act; and (2) instead falls "under the auspices of the First Amendment." Def. Br. at 4–6.  The Court disagrees.

The Lanham Act protects the unauthorized use of a mark in connection with the advertising of any goods or services if such use is likely to cause confusion.  15 U.S.C. §1125(a).  The term "services" has been interpreted broadly to apply to non-commercial public and civic benefits, including political organizations engaged in certain activities analogous to those alleged here.  *See United We Stand Am.*, *Inc. v. United We Stand*, *Am. New York, Inc.*, 128 F.3d 86, 93 (2d Cir. 1997) (finding that the Lanham Act applied to the defendants who performed "the services characteristically rendered by a political party," including issuing press releases intended to support certain candidates); *cf. American Diabetes Ass'n, Inc. v. National Diabetes Ass'n*, 533 F. Supp. 16, 20–21 (E.D.Pa. 1981), *aff'd*, 681 F.2d 804 (3d Cir. 1982) (applying the Lanham Act to the defendant, who was offering similar charitable services under the name "National Diabetes Association" to those offered by the plaintiff).  Accordingly, the services allegedly offered by Defendants—sending mailers to New Jersey voters in support of certain candidates, purportedly on behalf of the "New Jersey Democratic Party"—fall within the purview of the Lanham Act.

In addition, under the Lanham Act, neither political nor commercial speech will "fall under the auspices of the First Amendment" where use of the plaintiff's mark is likely to cause significant consumer confusion.  *See United We Stand*, 128 F.3d at 93 ("Even assuming that [the defendant] might communicate its political message more effectively by appropriating [the plaintiff's] mark, such appropriation would cause significant consumer confusion [and] is not protected by the First Amendment.").[3]  In *United We Stand*, the defendant argued that their use of the plaintiff's political

---

[3] *See also Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1018 (3d Cir. 2008) (explaining that in the context of commercial speech, which "does receive some First Amendment protection," the Lanham Act is "customarily [able to] avoid[] violating the First Amendment, in part by enforcing

mark was protected by the First Amendment.  128 F.3d at 93.  The court rejected this argument, reasoning that because the defendant was using the mark to associate itself with the plaintiff's political movement, rather than using it for an expressive purpose, the use was not protected.  *Id.* The court emphasized that use of a mark to suggest the same source identification is "precisely the use," that is reserved by the Lanham Act to the owner of a mark because permitting such use would cause confusion and allow for appropriation.  *Id.*

Here, because Plaintiff argues that Defendants are using its marks, "NJDEMS.com" and "New Jersey Democratic Party," to suggest the same source identification as Plaintiff, rather than for an expressive purpose, (Pl. Opp. Br. at 32–33), Defendants' First Amendment argument fails.

### B.  Rule 12(f) Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Thus, Rule 12(f) sets forth two standards for striking matter from a pleading: (1) "an insufficient defense," or (2) "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The second category is at issue here.

"[W]here the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party."  *F.T.C v. Hope Now Modifications*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011).  But motions to strike "will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the

---

a trademark only when consumers are likely to be misled or confused by the alleged infringer's use); *MGM-Pathe Communications Co. v. Pink Panther Patrol*, 774 F.Supp. 869, 877 (S.D.N.Y. 1991) (finding that there is "no legal support" for the defendant's position that because it is engaged in political speech it is less subject to the trademark laws).

allegations confuse the issues.'"  *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).  "As a general matter, motions to strike under Rule 12(f) are highly disfavored."  *Thompson v. Real Est. Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (citing *Hope Now Modifications*, 2011 WL 883202, at *1).  Further, the decision to strike material from a pleading is discretionary.  *Hope Now Modifications, LLC*, 2011 WL 883202, at *1.

Defendants move to strike paragraphs 2, 33, 34, 36–44, 48–50, 58–80, 83, 93, and 94.  Def. Br. at 7–16.  Defendants assert that the statements made in these paragraphs are immaterial, impertinent, and confuse the issues before the court, and that the "sole reason" for them is to prejudice Defendants' case.  Def. Br. at 16.  Defendants have not, however, demonstrated "no possible relation" to the controversy nor any "unfair prejudice" and therefore cannot overcome the high burden required for a motion to strike.  *See Hope Now Modifications, LLC*, 2011 WL 883202, at *1 (citation omitted) ("[W]here the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.").

### C.  Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a

plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. In deciding a motion to dismiss the Court may also consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation & emphasis omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).[4]

### 1.   Unfair Competition (Counts Three, Four, and Five)

Plaintiff brings unfair competition claims against Defendants pursuant to the Lanham Act as well as New Jersey statutory and common law. The Lanham Act permits trademark holders to bring an action against persons or entities who, in connection with goods or services, use in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin," which "is likely to cause confusion, or to cause mistake, or to deceive as to

---

[4] Defendants also ask the Court to dismiss pursuant to Rule 8. Def. Br. at 6. The Court treats this argument as part and parcel of the Rule 12(b)(6) motion.

the affiliation, connection, or association . . . or as to the origin, sponsorship, or approval of his or

her goods, services, or commercial activities." 15 U.S.C. §1125(a).   To establish an unfair

competition claim under the Lanham Act, a plaintiff must show the following:

> (1) the mark at issue is valid and legally protectable; (2) the mark is
> owned by the plaintiff; (3) the defendant used the mark in commerce
> or in connection with any goods or services or container for goods;
> and (4) this "use" was in a manner likely to create confusion
> concerning the origin of the goods or services.

*Freedom Funding Grp., Inc. v. Freedom Fundinggroup L.L.C.*, No. CV2018404, 2022 WL

3681281, at *10 (D.N.J. Aug. 25, 2022).

If the mark at issue is federally registered and has become incontestable, then validity, legal

protectability, and ownership are established.  *See Ford Motor Co. v. Summit Motor Prods.*, 930

F.2d 277, 292 (3d Cir. 1991).  Where, as here, the mark has not been federally registered, "validity

depends on proof of secondary meaning, unless the registered mark is inherently distinctive."

*Buying For The Home*, 459 F. Supp. 2d 310, 318 (D.N.J. 2006) (quoting *Fisons Horticulture, Inc.

v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994)).   In evaluating the distinctiveness of a

mark, the Court considers whether the mark is (1) generic; (2) descriptive; (3) suggestive; (4)

arbitrary; or (5) fanciful.   *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768

(1992).  Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and

entitled to protection, whereas marks that are descriptive are only protected if they attain secondary

meaning.  *Freedom Funding Group.*, 2022 WL 3681281, at *10–11.

Secondary meaning exists when the mark "is interpreted by the consuming public to be not

only an identification of the products or services, but also a representation of the origin of those

products or services."  *Commerce Nat. Ins. Services, Inc., v. Commerce Ins. Agency, Inc.*, 214 F.3d

432, 438 (3d Cir. 2000) (citation omitted).   Therefore, in determining whether a political

organization's name and insignia has secondary meaning, the inquiry is whether the relevant

consuming class—meaning the persons in the relevant geographic area who are interested in that

party and its activities—associates the name and insignia of that party with the political

organization. *Partido Revolucionario Dominicano (PRD) Seccional Metropolitana de*

*Washington-DC, Maryland y Virginia v. Partido Revolucionario Dominicano, Seccional de*

*Maryland y Virginia*, 312 F. Supp. 2d 1, 13 (D.D.C. 2004).  In making this determination, courts

may consider the following non-exhaustive list of factors:

> (1) extent of sales and advertising leading to buyer association; (2)
> length of use; (3) exclusivity of use; (4) fact of copying; (5)
> customer surveys; (6) customer testimony; (7) use of mark in trade
> journals; (8) size of company; (9) number of sales; (10) number of
> customers; and, (11) actual confusion.

*Ford Motor Co.*, 930 F.2d at 292.

Courts may also consider "other efforts at creating a conscious connection in the public's

mind between the designation and the service."  *American Diabetes Ass'n,* 533 F.Supp. at 19.

Because secondary meaning is a question of fact, a court does not need to determine at the motion

to dismiss stage whether marks in fact have secondary meaning.  *E.T. Browne Drug Co. v.*

*Cococare Prod., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008).  Instead, the Court must inquire whether

Plaintiff has plausibly alleged that Plaintiff's marks—"New Jersey Democratic Party" and

"NJDEMS"—acquired secondary meaning prior to Defendants' use , and whether Plaintiff's use

of these marks has been continuous.[5]  *See Ford Motor Co.*, 930 F.2d at 292 (citation omitted)

("With respect to ownership of unregistered marks, the first party to adopt a trademark can assert

---

[5] Plaintiff also alleges, in conclusory fashion, that its marks are "inherently distinctive."  *See, e.g.*,
SAC ¶ 97.  Plaintiff provides no facts in support of this conclusion, and, in the Court's view, the
marks are clearly descriptive.

ownership rights, provided it continuously uses it in commerce.").  The Court addresses each of the marks in turn.

As to "New Jersey Democratic Party," the Court cannot reasonably infer that the mark has acquired secondary meaning because the SAC fails to allege any facts about Plaintiff's use of the mark.  Turning to "NJDEMS," Plaintiff has pled that "[t]he term NJDEMS is used consistently by Plaintiff through various forms of media, including on Twitter, Facebook, its website, and other various media and advertising campaigns," and that "Plaintiff uses the term NJDEMS in association with various campaign materials it distributes in relation to elections throughout the State of New Jersey," such that the "public associates NJDEMS with Plaintiff" and the services and goods that Plaintiff provides.  SAC ¶¶ 91, 97.  Plaintiff has also indicated that it uses the NJDEMS mark in its domain name in support of its statutorily granted authority to represent the Democratic party in New Jersey and that through this domain, and other forms of communication, it endorses certain Democratic candidates to inform voters that it has determined that the election of those candidates would be beneficial to Plaintiff's objectives.  *Id.* ¶¶ 25, 92.  Likewise, Plaintiff contends that Defendants used the NJDEMS mark on the Mailer, and as part of their website, to deceive the Union County New Jersey voters into believing that Plaintiff endorsed the Board of Election candidates featured on the Mailer.  *Id.*  ¶¶ 1, 31, 78, 98–101.

The SAC does not, however, plead sufficient facts pertaining to the scope, duration, and continuity of Plaintiff's use of "NJDEMS" such that the Court can plausibly infer secondary meaning.  For example, while the pleadings set forth the various mediums by which the mark is used ("Twitter, Facebook, its website, and other various media and advertising campaigns"), and conclude that "the public associates NJDEMS with Plaintiff," Plaintiff does not describe facts pertaining to the duration of use on each of these mediums or the public's recognition of the mark

through these mediums (e.g., the number of Twitter or Facebook followers Plaintiff has or the number of visitors to its website). *Id.* ¶¶ 91, 97. Likewise, Plaintiff pleads that that the mark is used "in association with various campaign materials it distributes," but does not allege facts pertaining to the duration and scope of such distributions. *Id.* ¶ 91.

While it is not necessarily required to plead each one of these facts at this stage, Plaintiff must allege more—with respect to the scope, duration, and continuity of the use—to support a reasonable inference of secondary meaning in the minds of the consuming public. *See, e.g.*, *Lorillard Tech., Inc. v. NJ Ale House, LLC*¸ No. 2:14-2044, 2015 WL 1197531, at *7–8 (D.N.J. Mar. 13, 2005) (finding that secondary meaning was sufficiently pled where the plaintiff alleged the year that the use of the mark began and the numerous mediums through which the mark had been advertised to the relevant buyer class, including but not limited to magazines, news channels, commercials that featured celebrity spokespersons, and "major entertainment and sporting events," including the Oscars and Grammy awards); *see also Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 457 (E.D. Pa. 2014)  (finding that the plaintiffs plausibly pled that its marks were inherently distinctive or had secondary meaning where the complaint stated that for about 80 years, and prior to the defendants' use, the plaintiffs continuously used their marks in commerce in connection with their services; that significant time, effort, and expense had been invested by the plaintiffs in advertising and promoting these marks; and that the marks had "been used extensively by the press or other media to identify plaintiffs and the services they provide."); *American Diabetes Ass'n,*, 533 F.Supp. at 19 (finding a reasonable likelihood that the plaintiffs would be able to show that their mark achieved secondary meaning where the mark had been in use for 40 years, and the plaintiffs "showed a long history of

advertising in magazines and on television as well as extensive promotional efforts aimed at creating a nexus in the public's mind between [the mark] and the services they provide.").

Finally, Plaintiff must also allege sufficient facts to plausibly show that the marks had acquired secondary meaning by March 20, 2009 and March 30, 2009, the dates that Defendants allegedly began using the "NJDEMS" and "New Jersey Democratic Party" marks, respectively. SAC ¶¶ 12, 16 n. 2; *see Commerce Nat. Ins. Services, Inc.*, 214 F.3d at 438 ("A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark."); *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1231–32 (3d Cir. 1978) (the proper test is whether [the plaintiff] had established secondary meaning in the [] market before [the defendant] began using tis mark.").   Because the SAC does not set forth any facts pertaining to when secondary meaning of either mark was acquired, Plaintiff fails to sufficiently allege that "New Jersey Democratic Party" or "NJDEMS" established secondary meaning prior to Defendants' use.

Turning to likelihood of confusion, marks are "confusingly similar if ordinary consumers would likely conclude that the two products share a common source, affiliation, connection, or sponsorship." *A & H Sportswear, Inc., v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) (quoting *Fisons Horticulture Inc., v. Vigoro Industries, Inc.*, 30 F.3d 466, 477 (3d Cir. 1994)).   While courts may consider many factors[6] when assessing the likelihood of confusion, if

---

[6] The relevant factors consist of the following:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the

"the trademark owner and the alleged infringer deal in competing goods and services, the court need rarely look beyond the mark itself."  *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983).  Indeed, "[w]here goods or services are in direct competition . . . the degree of similarity required to prove likelihood of confusion is less than is required for dissimilar products."  *E.A. Sween Co., Inc. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 569 (D.N.J. 2014) (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004)).

Plaintiff has sufficiently pled that Defendants' use of NJDEMS could cause a likelihood of confusion.  Plaintiff alleges that, in the days leading up to the 2021 Election, Defendants used the "NJDEMS" mark as part of their website and on their Mailer, to imply that Plaintiff endorsed the Board of Election candidates, just as Plaintiff had endorsed Governor Murphy and Lt. Governor Oliver, who were pictured on the Mailer alongside the local candidates, with the phrases "New Jersey Democratic Party" and "Paid for by NJDEMS.com."  SAC ¶¶ 1, 31–32, 78, 98–99.  Plaintiff also sufficiently alleges that because "NJDEMS.com" is identical to "NJDEMS.org," apart from the domain name extension, such use of the mark was likely to create confusion regarding the origin of the goods and services referenced therein.  SAC ¶¶ 100–101.  *See Cosm. Warriors Ltd. V. Nailush LLC*, Civ. No. 17-1475, 2017 WL 5157390, at *4 (D.N.J. Nov. 6, 2017) ("Even if there

---

goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*A & H Sportswear*, 237 F.3d at 212 (citation omitted).

is some difference between the marks, if the infringing mark appropriates the entire mark but adds a descriptive word, a likelihood of confusion may exist."); *see also E.A. Sween Co.*, 19 F. Supp. 3d at 569  (recognizing that "Deli Express" and "Deli Express of Tenafly" "are identical (with 'OF TENAFLY' appended)" and in turn, are likely to cause confusion); *Lapp,* 721 F.2d at 462 (finding that the marks "Lapp" and "Lapp Cable" are identical "for all practical purposes" and thus likely to cause confusion).  For similar reasons, the Court finds that Plaintiff has adequately pled that Defendants' use of the "New Jersey Democratic Party" mark could cause a likelihood of confusion.

In sum, the Court finds that the SAC fails to adequately plead: (1) that "NJDEMS" and "New Jersey Democratic Party" acquired secondary meaning, generally and at the time that Defendants began use.  "Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law, the Court's analysis [above] extends to Plaintiff's state law claims as well." *Buying For The Home*, 459 F. Supp. 2d at 317; *see also J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law"); *Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc.*, 952 F. Supp. 1084, 1091 (D.N.J. 1997) ("N.J.S.A. 56:4-1 is the statutory equivalent of Section 43(a)(1) of the Lanham Act").

Accordingly, the Court grants Defendants' Motion to Dismiss Count Three (unfair competition pursuant the Lanham Act), Count Four (unfair competition pursuant to N.J.S.A. § 56:4-1), and Count Five (common law unfair competition).

### 2. **Cybersquatting (Count Two)**

Plaintiff also claims that Defendants violated the Anticybersquatting Consumer Protection Act ("ACPA") SAC ¶¶ 90–95. "[C]ybersquatting is the act of registering, in bad faith and to garner profit, on the internet a domain name so similar to a distinctive mark that it is confusing." *Green v. Fornario*, 486 F.3d 100, 103 n. 5 (3d Cir. 2007). To prevail on an ACPA claim, the plaintiff must prove that (1) plaintiff's mark was a distinctive or famous mark entitled to protection at the time of registration; (2) defendants' domain name is "identical or confusingly similar to" plaintiff's mark; and (3) defendants registered the domain name with the bad faith intent to profit from the mark. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

Here, the Court must first determine whether Plaintiff has alleged sufficient facts to establish that its mark ("NJDEMS") was a distinctive or famous mark at the time Defendants registered their domain name, "NJDEMS.com." 15 U.S.C. §1125(d)(1)(A)(ii)(I) and (II). The following factors may be considered when making this inquiry:

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties.

*Shields*, 254 F.3d at 482 (citing 15 U.S.C. §1125(c)(1)).

As determined above in connection with the unfair competition claims, Plaintiff has not sufficiently pled facts to support a finding that its "NJDEMS" mark, which is incorporated in the domain name "NJDEMS.org," has acquired secondary meaning. As a result, the SAC does not

plead adequate facts to support a finding that "NJDEMS.org" had acquired secondary meaning by March 20, 2009, the date on which Defendants allegedly registered "NJDEMS.com."  SAC ¶ 12.

Otherwise, Plaintiff has adequately alleged that Defendants' domain name and mark is identical or confusingly similar to Plaintiff's mark.  Defendants' registered domain name, NJDEMS.com, is identical to Plaintiff's domain name, NJDEMS.org, and accordingly is confusingly similar.  *See Fancaster, Inc. v. Comcast Corp.*, 832 F.Supp.2d 380, 428 ("Courts generally ignore extensions like '.com' or '.org' when evaluating whether domain names are identical for the purposes of ACPA."); *see also Shields*, 254 F.3d at 438 (upholding the district court's finding that the domain names at issue were confusingly similar because only a few letters varied between them and reasoning that Defendants had anticipated that consumers would make a mistake, thereby increasing traffic to their own website, which is the "classic example" of a practice the ACPA aims to prevent).

Similarly, Plaintiff has adequately alleged that Defendants registered the domain name with the bad faith intent to profit from the mark.  The ACPA provides a non-exhaustive list of nine factors to consider whether a defendant has acted in bad faith.  *See* 15 U.S.C. §1125(d)(1)(B)(i). One key consideration is the

> person's intent to divert consumers from the owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

15 U.S.C. §1125(d)(1)(B)(i)(V).  Here, Plaintiff alleges that Defendants "attempt[ed] to deceive voters into believing that the candidates depicted on the mailings were actually endorsed or supported by Plaintiff or were selected as party nominees in Plaintiff's primary election," and that Defendants "intended to divert the public from NJDEMS.org in an effort to mislead voters into

believing that NJDEMS.com was the official website of Plaintiff." SAC ¶¶ 1, 94. The Court finds these allegations sufficient to support a finding of bad faith.

In sum, the pleadings are adequate to support a finding that Defendants' domain name and mark is identical or confusingly similar to Plaintiff's mark, and that Defendants registered the domain name in bad faith; however, the pleadings are insufficient to find that "NJDEMS" acquired secondary meaning, both generally and at the time that Defendants began use. Accordingly, Defendants' motion to dismiss with respect to Count Two (cybersquatting) is granted.

### 3.   Violation of Corporate Name Statute (Count Six)

Plaintiff also asserts a corporate name claim pursuant to New Jersey law. Under N.J. Stat. Ann. § 15A:2-2, a nonprofit's corporate name "[s]hall not be the same as, or confusingly similar to, the corporate name of any domestic corporation" unless that corporation or corporate entity has provided appropriate written consent or a court has rendered a final judgment establishing the prior right of the corporation to use the name in this state. N.J. Stat. Ann. §15A:2-2(a)(2). A nonprofit's corporate name is "confusingly similar" where the name being used by defendant has widespread recognition such that "[i]t may well be assumed by the public that any unit bearing that name is part of the larger organization and shares its prestige." *See New Jersey Ass'n for Child. with Learning Disabilities v. Burlington Cnty. Ass'n for Child. with Learning Disabilities*, 163 N.J. Super. 199, 208, (Ch. Div. 1978), *aff'd in part, rev'd in part on other grounds*, 174 N.J. Super. 149, (App. Div. 1980) (enjoining defendants from using the title "Burlington County Association for Children with Learning Disabilities," because the name "Association for Children With Learning Disabilities," had "nationwide recognition" and thus created confusion about defendant's affiliation with the plaintiff).

Here, Plaintiff pleads that the name of Defendants' nonprofit corporation, "New Jersey Democratic Party A NJ Nonprofit Corporation" is confusingly similar to Plaintiff's corporate name, "The Democratic Party of NJ, Inc., organized as the New Jersey Democratic State Committee." SAC ¶¶ 105, 107–108. Plaintiff also pleads that it is the sole statewide committee authorized to represent Democrats and the Democratic party in New Jersey and is tasked with maintaining the political organization and management of the Democratic Party within the State. SAC ¶ 106. Plaintiff continues that by incorporating a nonprofit using the name "New Jersey Democratic Party," Defendants evidenced their intent to conceal their identity and deceive the voters in the state and "created actual confusion among voters" as to whether Plaintiff endorsed the Board of Education candidates depicted on the Mailer. SAC ¶¶ 57, 80. The Court finds these allegations sufficient to support a finding that the names are "confusingly similar." Therefore, Defendants' motion to dismiss Count Six is denied.

#### 4. Civil Conspiracy (Count One)

Count One alleges civil conspiracy with the underlying unlawful acts of (i) misrepresenting, concealing, and failing to report political expenditures in violation of N.J. Stat Ann. 19:44A-21(a); (ii) not properly registering with ELEC pursuant to N.J. Admin. Code 19:25-4.4 or 4.5; (iii) engaging in acts with the intent to defraud and deceive New Jersey voters regarding their affiliation with Plaintiff; (iv) registering a domain name with the bad faith intent to profit from the use of Plaintiff's mark; (v) using Plaintiff's marks in a manner likely to create confusion concerning the origin of the goods and services referenced; and (vi) incorporating and using a corporate name that is confusingly similar to Plaintiff's. SAC ¶¶ 82–89.

Under New Jersey law, civil conspiracy has four elements: "'(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of

an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'"  *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir.2003)); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005).  "In addition, one of the parties must commit some act that is itself a tort in pursuance of the agreement.  Mere agreement to do an act can never alone amount to a tort." *Delzotti v. Morris*, No. 14-7223, 2015 WL 5306215, at *7 (D.N.J. Sept. 10, 2015) (internal citations and quotations omitted).

Defendants argue that Plaintiff "has failed to allege a civil conspiracy on every front."  As to the first and second elements, the Complaint alleges that "Defendants acted in concert, and upon information and belief, under an agreement, to commit several unlawful acts."  SAC ¶ 83.  This conclusory allegation, standing alone, is insufficient.  However, Plaintiff also alleges that "Devine and McCormick are domestic partners" who live at the same address.  *Id.* ¶¶ 9–11.  Taking these allegations as true, the reasonable inference is that Devine and McCormick are close and, therefore, more likely to act in concert.  Moreover, Plaintiff indicates that Devine and McCormick have an extensive history of similar conduct, providing numerous specific examples.  *Id.* ¶¶ 58–81.  The Court finds Plaintiff has adequately pled the first two elements of a civil conspiracy.

The Court next addresses whether Plaintiff has adequately pled the existence of an underlying tort.  First, with respect to the claims that Defendants violated New Jersey Election Statute §19:44A-21(a) and New Jersey Administrative Code §19:25-4.4 or 4.5, Plaintiff fails to demonstrate that the statute and regulations provide for a private cause of action.[7]  Plaintiff also

---

[7] As to the alleged violations of New Jersey Administrative Code §19:25-4.4 or 4.5, Plaintiff also fails to plead that Defendants have met the financial thresholds that trigger these regulations.  *See* N.J. Admin. Code §19:25-4.4 and §19:25-4.5.  Section 19:25-4.4 states, in relevant part, that a political committee shall be established no later than the date on which the committee "first receives any contribution or makes or incurs any expenditure that, when combined with other

apparently pleads fraud in connection with the Mailer.  The Court finds that the pleadings satisfy Rule 9(b),[8] because they set forth "the nature or subject of the fraud, or an indication of who made the alleged representations and to whom," as required by Rule 9(b).  *State Capital Title & Abstract Co. v. Pappas Business Services, LLC*, 646 F.Supp.2d 667, 681 (D.N.J. 2009) (citations omitted). Plaintiff's next two claims—(iv) registering a domain name with the bad faith intent to profit from the use of Plaintiff's mark and (v) using Plaintiff's marks in a manner likely to create confusion concerning the origin of the goods and services referenced—are restatements of Plaintiff's Lanham Act and unfair competition claims, which as discussed above, have not been sufficiently pled. Plaintiff's remaining allegation is a restatement of its Corporate Registration claim, which the Court has concluded was sufficiently pled.  *See supra* C.3.

The fourth element of civil conspiracy is special damages.  "Special, as contradistinguished from general damage, is that which is the natural, but not the necessary, consequence of the act complained of."  *Delzotti*, 2015 WL 5306215, at *8 (citation omitted); *see Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ("The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'")  Unlike general damages, special damages must be

---

contributes received in an election, or expenditures made or incurred in an election, totals $3,200 or more," and that "[a] political party which expects to raise or expend funds in each of two or more successive elections may apply to the Commission to be certified as a continuing political committee." N.J. Admin. Code § 19:25-4.4(a), (f).  Section 19:25-4.5 states, in relevant part, that an organization shall become eligible to be certified by the Commission as a continuing political committee no later than the date on which it receives any contribution or makes or incurs any expenditure that when combined with other contributions received or expenditures made in a calendar year totals $7,200 or more.

[8] To satisfy Rule 9(b), a plaintiff must plead with particularity the circumstances of the alleged fraud to put defendants on notice of the precise misconduct they are charged with, which may be satisfied by pleading "date, place, or time of the fraud," or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *State Capital Title & Abstract Co. v. Pappas Business Services, LLC*, 646 F.Supp.2d 667, 681 (D.N.J. 2009) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

specifically pled under Rule 9(g).  Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").  "The purpose underlying Rule 9(g) is to give notice to the other side of those 'special' damages claimed."  *Delzotti*, 2015 WL 5306215, at *8. (internal quotation and citation omitted).

Here, Plaintiff has pled that "Defendants' overt acts and illegal conduct has harmed Plaintiff, and the voters of New Jersey, by creating confusion surrounding Plaintiff's endorsements and defrauding voters into believing that certain candidates on the Deceptive Mailer are endorsed by Plaintiff."  SAC ¶ 89.  The Court is cognizant of the harm that can result when a political party's name is misappropriated.  *See, e.g.*, *United We Stand*, 128 F.3d at 90 ("If different organizations were permitted to employ the same trade name in endorsing candidates, voters would be unable to derive any significance from an endorsement, as they would not know whether the endorsement came from the organization whose objectives they shared or from another organization using the same name. . . . [t]he resulting confusion would be catastrophic; voters would have no way of understanding the significance of an endorsement or position taken by parties of recognized major names.").  Nevertheless, Plaintiff has not satisfied its burden of pleading that voter confusion qualifies as special damages.  Accordingly, because Defendants have failed to adequately plead special damages, Defendants' motion to dismiss Count One is granted with respect to all claims.

### 5.  Laches

Defendants' final argument is that laches precludes Plaintiff from maintaining this cause of action.  Def. Br. at 39–41.  Laches is an affirmative defense, and "[g]enerally, courts in this circuit 'will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6).'"  *Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd.*, No. 2:17-cv-5358, 2018 WL 1169132, at *5 (D.N.J. Mar. 6, 2018) (citations omitted).  An affirmative defense will only be an

appropriate ground for dismissal when, "on the face of a complaint, it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar." *Kaufhold v. Caifa*, 872 F.Supp.2d 374, 380 (D.N.J. 2012). Under the Lanham Act, claims are properly analogized to New Jersey's six-year fraud statute; however, "[a] plaintiff is not obligated to sue until it knows or should know that the defendant's conduct constitutes trademark infringement." *Kars 4 Kids Inc., v. American Can!*, 8 F.4th 209, 221 (3d Cir. 2021). Here, the pleadings are sufficient to support a finding that Plaintiff learned of Defendants' use of its marks in October 2021, when the Mailer was distributed, which was days before Plaintiff initiated this action. SAC ¶ 31. Accordingly, because the laches issue cannot be decided based on the face of Plaintiff's SAC, Defendants' motion to dismiss on this ground is denied.

## IV.    CONCLUSION

Defendants' motion to dismiss Counts One, Two, Three, Four, and Five is **GRANTED**. Counts One, Two, Three, Four, and Five are dismissed without prejudice to allow Plaintiff an opportunity to an amended pleading which cures the deficiencies noted herein. Plaintiff has thirty (30) days to file another amended complaint, and if it does not do so, the dismissal will be with prejudice. Defendants' motions are otherwise **DENIED**. An appropriate Order accompanies this opinion.

 Dated: October 4, 2022

John Michael Vazquez, U.S.D.J.