**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE DEMOCRATIC PARTY OF NJ, INC., *organized as the* NEW JERSEY DEMOCRATIC STATE COMMITTEE,<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES DEVINE, LISA MCCORMICK, "NJDEMS.COM", NEW JERSEY DEMOCRATIC PARTY A NJ NONPROFIT CORPORATION, JOHN AND JANE DOES 1-20, AND XYZ CORPORATIONS 1-20,<br><br>*Defendants*. | Civil Action No. 22-01268<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter returns to the Court on the motion of Defendants James Devine, Lisa McCormick, NJDEMS.com, and New Jersey Democratic Party A NJ Nonprofit Corporation (collectively, "Defendants") to dismiss Plaintiff's Third Amended Complaint. D.E. 37. The Court reviewed the submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

---

[1] Plaintiff's Third Amended Complaint will be referred to as "TAC" (D.E. 31); Defendants' brief in support of its motion to dismiss will be referred to as "Def. Br." (D.E. 37-1); Plaintiff's opposition brief will be referred to as "Plf. Opp." (D.E. 49); and Defendants' reply brief will be referred to as "Def. Reply." (D.E. 50).

I.     **FACTUAL BACKGROUND**[2]

Plaintiff is the New Jersey Democratic Party Inc., organized as the New Jersey Democratic State Committee ("NJDSC"), the sole statewide committee authorized under state law to represent the Democratic Party in New Jersey. TAC ¶¶ 8, 22. Defendants Devine and McCormick are New Jersey residents, domestic partners, and co-owners and operators of the website NJDEMS.com. *Id.* ¶¶ 9-11. NJDEMS.com is a website that was registered on March 20, 2009, and has New Jersey listed as the "home state" under "Registrant Contact Information." *Id.* ¶ 12. New Jersey Democratic Party A NJ Nonprofit Corporation ("NJDP Inc.) is a non-profit corporation with a registered office in New Jersey, and Devine is the registered agent for, and one of the trustees and/or officers of, this nonprofit corporation. *Id.* ¶ 16.

As the official statewide committee for the Democratic Party, Plaintiff maintains the political organization and management of the Democratic Party in New Jersey. *Id.* ¶ 22. This includes "setting the party's standards, ideologies, and preferences to maintain the unity of the party throughout the state and give voters a clear depiction of who the party is, what it stands for, and who its standard bearers are." *Id.* Since December 1, 1984, Plaintiff has used the mark "New Jersey Democratic Party" in its campaign materials, press releases, and other written and electronic communications to identify Plaintiff's services and represent the origin of those services. *Id.* ¶¶ 31, 32. Third parties, including local and national news outlets, have also used this mark to refer to Plaintiff since at least 1984, and Plaintiff has become "known" to "persons both inside and outside of New Jersey who are interested in the Democratic Party and its activities" as the "New Jersey Democratic Party." *Id.* ¶ 33. Present day sources also associate the mark "New Jersey

---

[2] The factual background is taken from Plaintiff's Third Amended Complaint ("TAC"), D.E. 31. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in a complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Democratic Party" with Plaintiff, such as Wikidata, which lists several names by which Plaintiff is "also known as," including "New Jersey Democratic Party." *Id.* ¶ 34. In addition, search engines direct searches for "New Jersey Democratic Party" to Plaintiff's website and other materials prepared by Plaintiff. *Id.* ¶ 35.

The mark "NJDEMS" has been used as the name of Plaintiff's website—NJDEMS.org—since at least December 25, 1996. *Id.* ¶ 36. Plaintiff has operated its website at this address since then and uses the website in support of its "statutorily-granted authority under Title 19 as the sole statewide committee authorized to represent the Democratic party in New Jersey." *Id.* ¶¶ 37, 106. Through this website and other avenues, Plaintiff communicates with voters regarding its platform and endorsement of candidates in statewide elections. *Id.* ¶¶ 25, 37. This included endorsing certain Democratic candidates for political office in the 2021 New Jersey general election ("2021 Election"), as well as other upcoming election cycles. *Id.* ¶ 25. Plaintiff also uses the "NJDEMS" mark on campaign materials that it distributes in relation to elections throughout New Jersey as well as on its website and social media pages to engage with the citizens of New Jersey. *Id.* ¶¶ 38, 105, 107. On each of its social media pages—Facebook, Twitter, and Instagram, where Plaintiff has approximately 19,000, 14,200, and 1,584 followers, respectively—the "NJDEMS" mark appears in Plaintiff's profile picture, and the mark also appears throughout the page on Twitter and Instagram. *Id.* ¶¶ 39, 41, 43.[3]

Plaintiff alleges that in October 2021, in the days leading up to in-person voting for the 2021 Election, and after the start of the mail-in voting period, Defendants sent an unsolicited political mailer (the "Mailer") to New Jersey residents that was intended to deceive voters into

---

[3] Plaintiff's Facebook page was created on August 2, 2009, Plaintiff's Twitter account was created in June 2010, and Plaintiff's Instagram account was created in March 2019. *Id.* ¶¶ 40, 42, 44.

3

believing that the candidates depicted on the Mailer were endorsed or supported by Plaintiff. *Id.* ¶ 1. The Mailer was sent to Union County Residents, primarily in the Borough of Roselle. *Id.* ¶¶ 45-46. One side of the Mailer depicted a picture of Governor Phil Murphy and Lieutenant Governor Sheila Oliver (who were running for re-election, and Plaintiff's nominated candidates) as well as a photograph of three candidates running for the Board of Education in Roselle: Gisselle Bond, Yessica Chavez, and France Cortez. *Id.* ¶ 47 (citing Exhibit A). Along the bottom, it read: "Paid for by NJDEMS.COM," "New Jersey Democratic Party," and "Not authorized by any candidate or committee." *Id.* ¶ 49. On the other side, the Mailer included photographs of the same five individuals, with the text, "Please be sure to vote Column 1 for school board & Column A all the way from Governor on Down!," "Gisselle Bond, Yessica Chavez, & Frances Cortez are the best candidates for Roselle Schools!" *Id.* ¶¶ 50–51.

Plaintiff claims that the Mailer, which featured the "NJDEMS" and "New Jersey Democratic Party" marks, strongly implied that Plaintiff endorsed or supported the Board of Education candidates, just as Plaintiff had endorsed Governor Murphy and Lt. Governor Oliver in the upcoming election. *Id.* ¶¶ 1, 48. But Plaintiff did not endorse the school board candidates. *Id.* ¶ 48. Plaintiff continues that Devine and McCormick have an extensive history of similar deceptive conduct and provide numerous specific examples. *Id.* ¶¶ 72–95.

## II.   PROCEDURAL HISTORY

On October 22, 2021, Plaintiff filed a Complaint in the Superior Court of New Jersey, alleging one count of civil conspiracy. D.E. 1-1. The state court temporarily enjoined Defendants from "creating and publishing or transmitting political flyers, communications or advertisements which include or imply endorsement or authorization by [Plaintiff]." D.E. 1-3, 1-9, 1-12. Plaintiff filed its First Amended Complaint ("FAC") on March 8, 2022, adding five additional claims. D.E.

4

1-19. Defendants then removed the action to this Court and moved to dismiss the FAC. D.E. 1, 4. The Court administratively terminated the motion to dismiss on April 11, 2022 and ordered that Plaintiff file an amended complaint. D.E. 15. On May 2, 2022, Plaintiff filed its Second Amended Complaint ("SAC") and Defendants moved to dismiss and to strike. D.E. 16, 20-1. On October 4, 2022, the Court granted in part and denied in part Defendants' motion to dismiss and to strike (denying the motion to strike and the motion to dismiss as to Count Six and granting the motion to dismiss as to Counts One, Two, Three, Four, and Five). D.E. 29. On November 3, 2022, Plaintiff filed the TAC. D.E. 31. The TAC asserts the same claims as those asserted in the SAC: (1) civil conspiracy (Count One); (2) a violation of the Anticybersquatting Consumer Protection Act ("ACPA") (Count Two); (3) unfair competition claims pursuant to the Lanham Act, New Jersey statutory law, and common law (Counts Three, Four, and Five, respectively); and (4) a violation of New Jersey's corporate name statute (Count Six). Defendants move to dismiss Plaintiff's unfair competition, cybersquatting, and corporate name statute claims (Counts Two through Six) under Rule 12(b)(6).[4]

### III. LAW AND ANALYSIS

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[4] Defendants also moved to dismiss Plaintiff's civil conspiracy claim (Count One) under Rule 12(b)(6). Because Plaintiff does not oppose dismissal of this claim, Defendants' motion is granted as to Count One. *See* Plf. Opp. at 3 n.1 ("Plaintiff does not oppose dismissal of its claim for civil conspiracy (Count 1)").

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. In deciding a motion to dismiss the Court may also consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation & emphasis omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### A. Unfair Competition (Counts Three, Four, and Five)

Plaintiff brings unfair competition claims against Defendants pursuant to the Lanham Act as well as New Jersey statutory and common law. The Lanham Act permits trademark holders to bring an action against persons or entities who, in connection with goods or services, use in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin," which "is likely to cause confusion, or to cause mistake, or to deceive as to

the affiliation, connection, or association . . . or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. §1125(a). To establish an unfair competition claim under the Lanham Act, a plaintiff must show the following:

> (1) the mark at issue is valid and legally protectable; (2) the mark is owned by the plaintiff; (3) the defendant used the mark in commerce or in connection with any goods or services or container for goods; and (4) this "use" was in a manner likely to create confusion concerning the origin of the goods or services.

*Freedom Funding Grp., Inc. v. Freedom Fundinggroup L.L.C.*, No. 20-18404, 2022 WL 3681281, at *10 (D.N.J. Aug. 25, 2022).

The Court found in its October 4, 2022 Opinion that Plaintiff adequately pled the third and fourth elements—that Defendants used "New Jersey Democratic Party" and "NJDEMS" in connection with good and services in a manner that was likely to cause confusion regarding the origin of the good or services. D.E. 29 at 14-15. For those same reasons, which the Court adopts and incorporates by reference, the Court finds that Plaintiff's allegations are sufficient to find that Defendants' use was likely to cause confusion. Thus, the Court only considers whether Plaintiff has adequately pled that it owns valid and legally protectable marks.

Here, because "New Jersey Democratic Party" and "NJDEMS" have not been federally registered, "validity depends on proof of secondary meaning, unless the registered mark is inherently distinctive." *Buying For The Home*, 459 F. Supp. 2d 310, 318 (D.N.J. 2006) (quoting *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994)). In evaluating the distinctiveness of a mark, the Court considers whether the mark is (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and entitled to protection, whereas marks that are descriptive are

only protected if they attain secondary meaning. *Freedom Funding Group.*, 2022 WL 3681281, at *10-11.

Secondary meaning exists when the mark "is interpreted by the consuming public to be not only an identification of the products or services, but also a representation of the origin of those products or services." *Commerce Nat. Ins. Services, Inc., v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (citation omitted).[5] Because secondary meaning is a question of fact, a court need not determine at the motion to dismiss stage whether the marks in fact have secondary meaning. *E.T. Browne Drug Co. v. Cococare Prod., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008). Instead, the Court must only consider whether Plaintiff has plausibly alleged that Plaintiff's marks—"New Jersey Democratic Party" and "NJDEMS"—acquired secondary meaning prior to Defendants' use, and whether Plaintiff's use of these marks has been continuous.[6] *See Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991) (citation omitted) ("With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce.").

In determining whether a political organization's name and insignia acquired secondary meaning, the inquiry is whether the relevant consuming class—meaning the persons in the relevant geographic area who are interested in that party and its activities—associates the name and insignia

---

[5] *See also Dranoff–Perlstein Associates v. Sklar*, 967 F.2d 852, 858 (3d Cir.1992) (explaining that secondary meaning exists when a business "has used words [] for so long or so exclusively or when it has promoted its product to such an extent that the words do not register their literal meaning on the public mind but are instantly associated with one enterprise (internal quotation marks and citations omitted)).

[6] Plaintiff also alleges, in conclusory fashion, that its marks are "inherently distinctive." *See, e.g.*, TAC ¶ 112. Plaintiff provides no facts in support of this conclusion, and, in the Court's view, the marks are descriptive.

8

of that party with the political organization. *Partido Revolucionario Dominicano (PRD) Seccional Metropolitana de Washington-DC, Maryland y Virginia v. Partido Revolucionario Dominicano, Seccional de Maryland y Virginia*, 312 F. Supp. 2d 1, 13 (D.D.C. 2004).  Courts may consider a list of non-exhaustive factors, such as the duration and exclusivity of use, the nature and extent of advertising and promotion, the fact of copying,[7] as well as "other efforts at creating a conscious connection in the public's mind between the designation and the service." *American Diabetes Ass'n v. Nat'l Diabetes Ass'n*, 533 F.Supp. 16, 19 (E.D.Pa. 1981), *aff'd*, 681 F.2d 804 (3d Cir. 1982).  Courts may also consider "the existence of media coverage or other recognition by independent institutions" and "the credentials of those associated with the organization." *Cancer Rsch. Inst., Inc. v. Cancer Rsch. Soc., Inc.*, 694 F. Supp. 1051, 1055 (S.D.N.Y. 1988) (citations omitted).

Turning first to the "New Jersey Democratic Party" mark, the Court finds that Plaintiff plausibly pleads secondary meaning prior to Defendants' use and that such use has been continuous.  Since "no later than December 1, 1984"—approximately 25 years prior to Defendants' use—Plaintiff has used the "New Jersey Democratic Party" mark "consistently in campaign materials, press releases, and other written and electronic communications as a way to not only identify Plaintiff's services, but also to represent the origin of those services." *Id.* ¶¶ 31-32.  Likewise, since 1984, "third-parties both inside New Jersey and across the United States," including local and national news sources, have referred to Plaintiff as the "New Jersey Democratic Party." *Id.* ¶ 33.  "[P]ersons both inside and outside of New Jersey who are interested in the Democratic Party and its activities" also associate the "New Jersey Democratic Party" mark with

---

[7] *Ford Motor Co.*, 930 F.2d at 292.

Plaintiff, as do internet sources, such as Wikidata. *Id.* ¶¶ 33, 34. As to credentials, Plaintiff is authorized by New Jersey law "to represent Democrats and the Democratic [P]arty in New Jersey," and accordingly, "is tasked with maintaining the political organization and management of the Democratic Party within the [s]tate." *Id.* ¶ 122. And those most prominently associated with Plaintiff—candidates nominated and/or endorsed by Plaintiff—are recognized leaders of the Democratic Party in New Jersey. *Id.* ¶¶ 25, 47.[8] Further, during the 2021 Election period, Defendants included the "New Jersey Democratic Party" mark alongside photos of candidates Plaintiff endorsed in the election on the Mailer that it sent to Union County New Jersey voters to imply that Plaintiff also endorsed or supported the Board of Education candidates featured on the mailer.[9] *Id.* ¶¶ 1, 47-49, 71, 94, 97, 102, 115-117.

These facts are sufficient for the Court to plausibly infer that "New Jersey Democratic Party" acquired secondary meaning prior to Defendants' use.[10] And Defendants' challenges do

---

[8] *See Cancer Rsch. Inst., Inc*, 694 F. Supp. at 1055 (citing *American Diabetes Ass'n,* 533 F.Supp. at 19, 21) (finding, in the preliminary injunction context, that the plaintiff's mark acquired secondary meaning in light of the plaintiff's credentials, including its association with recognized leaders in the relevant field, among other factors).

[9] *Contra Com. Nat. Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 440 (3d Cir. 2000) (observing that while the plaintiff emphasized "the fact of copying (i.e., the fact that [the defendant] also uses the [] mark in its business name) there [was] no evidence that [the defendant] intended to leach off the goodwill of [the plaintiff] by appropriating its mark."); *cf. Scott Paper Co.*, 589 F.2d at 1228 (explaining that secondary meaning may even be acquired as to goods or services to which the mark has not been applied because of the "potential danger" that "the reputation of the holder of the mark may be tarnished" or "the use of an infringing mark may be attempting to benefit from the general goodwill developed by the holder of the protected mark." (internal citations omitted)).

[10] *See Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 457 (E.D. Pa. 2014) (ruling that the plaintiffs plausibly pled that its marks were inherently distinctive or had secondary meaning where the complaint stated that for about 80 years, and prior to the defendants' use, the plaintiffs continuously used their marks in connection with their services; that significant time, effort, and expense had been invested by the plaintiffs in advertising and promoting these marks; and that the marks had been used by the press and other media to identify

not persuade the Court otherwise. Defendants first attack Plaintiff's allegations regarding use of the mark in articles, arguing that any alleged use in articles "is of little to no value" because "the onus is on [Plaintiff] to demonstrate that such coverage was unsolicited," which Plaintiff fails to allege. Def. Br. at 18-19.[11] But Defendants rely on authority as to the sufficiency of proof rather than that of the pleading.[12] Similarly, Defendants' remaining arguments address the weight and

---

plaintiffs and the services they provide); *contra Com. Nat. Ins. Servs., Inc.*, 214 F.3d at 440 (finding that the court could not reasonably conclude that the mark acquired secondary meaning before the defendants' use because the trade journals and publications that used the mark to refer to the plaintiff were not published until after the defendants' use and because the plaintiff's statements about promoting the mark through various means did not demonstrate that whether such promotion pre-dated the defendants' use).

[11] Defendants also argue that Plaintiff "fails to give any quotes or context to the articles" and that only five of the articles were published in New Jersey publications. Def. Br. at 19 n.3. But Plaintiff does provide context—that these articles "refer to the then-chair of the NJDSC as the chairman of the 'New Jersey Democratic Party'"—and at least eight of the articles appear to have been published in New Jersey publications, with the other articles published primarily in publications that cover regional news. *See id.* ¶ 33 n.5.

[12] *See Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431 (3d Cir. 1994) (review of a denial of a preliminary injunction); *FM 103.1, Inc. v. Universal Broadcasting of New York*, 929 F.Supp. 187, 196 (D.N.J. 1996) (summary judgment); *National Distillers Products Co., LLC v. Refreshment Brands, Inc.*, 198 F.Supp.2d 474 (S.D.N.Y. 2002) (bench trial); *Gameologist Grp. LLC. v. Scientific Games Intern., Inc.*, 838 F.Supp.2d 141 (S.D.N.Y. 2011) (summary judgment); *LVL XIII Brands v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612 (S.D.N.Y. 2016) (summary judgment).

relevance of the evidence.[13] Yet, the Court's role at this stage is to determine whether, accepting the well-pleaded facts as true, secondary meaning is sufficiently pled.[14]

Turning to "NJDEMS," Plaintiff has pled that it uses the NJDEMS mark in its domain name—NJDEMS.org—in support of its statutorily-granted authority, and that this has been the name of its website since at least December 25, 1996. *Id.* ¶¶ 24, 36, 37. Through this website, Plaintiff endorses certain Democratic candidates to inform voters that it has determined that the election of those candidates would be beneficial to Plaintiff's objectives. *Id.* ¶¶ 25, 105. Plaintiff also uses "NJDEMS" on campaign materials that it distributes in relation to elections throughout

---

[13] Defendants argue that the Wikidata page allegation "weighs" in Defendants' favor because Plaintiff's page was created in 2014 and the "New Jersey Democratic Party" entry was not added until September 2020, "[t]hus even Wikidata bots and editors did not associate" the mark with Plaintiff "for over six years after the creation of Plaintiff's [] page." Def. Br. at 20-21; Def. Reply at 11-12. Defendants also contend that the search engine results are not relevant because they were run on November 3, 2022, and "the only relevant dates for this action are March 20 and March 30, 2009," and because Plaintiff must "demonstrate" that it did not manipulate the rests. Def. Br. at 21-22; Def. Reply at 12. But these allegations go to scope and continuity of use, and at the pleading stage, the Court accepts the well-pleaded facts as true. The Court notes, however, that search engine results alone—absent allegations about whether the relevant market of consumers visit the pages that are populated—do not necessarily support a finding of secondary meaning. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1051 (10th Cir. 2008) ("[T]he number of search engine 'hits' would support [the plaintiff's] claim of secondary meaning only if accompanied by some kind of evidence that the relevant market of consumers had visited the websites containing these hits.'").

[14] Defendants' abandonment argument is also improper at this stage. Defendants argue that "based on [Plaintiff's] submitted evidence for a twenty-two-year period," "Plaintiff took no steps to protect or use" the "New Jersey Democratic Party" mark and thus abandoned the mark. Def. Br. at 24-28. This argument is premature, and it improperly places the burden on Plaintiff. *See* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 17:5 (5th ed.) ("Abandonment is an issue of fact, subject to the normal procedural rules governing factual issues, such as summary judgment and the scope of review on appeal."); *see also interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 352 (D.N.J. 2004) (explaining that the party asserting abandonment has the burden of proof). Likewise, the USPTO determination that Defendants rely on is not dispositive. *See* Def. Br. at 13-15; Def. Reply at 10-11; *see also Lorillard Techs., Inc. v. NJ Ale House, LCC*, No. 14-2044, 2015 WL 1197531, at *9 n.5 (D.N.J. Mar. 13, 2015) (citation omitted) (declining to find the USPTO determination dispositive at the motion to dismiss stage, as the parties will likely present more evidence than the USPTO had available when making its determination).

New Jersey, and on its website and social media pages to engage with the citizens of New Jersey, such that the public associates the "NJDEMS" mark with Plaintiff and the services and goods that Plaintiff provides. *Id.* ¶¶ 38, 105, 107, 112. On each of its social media pages—Facebook, Twitter, and Instagram—"NJDEMS" appears in Plaintiff's profile picture, and it also appears throughout the page on Twitter and Instagram. ¶¶ 39-40, 41-42, 43-44.[15] Plaintiff's Facebook page was created in August 2009, its Twitter account in June 2010, and its Instagram account in March 2019, and these pages have approximately 19,000, 14,200, and 1,600 followers, respectively. *Id.* In the days leading up to in-person voting for the 2021 Election, Defendants used the "NJDEMS" mark on the Mailer, and as part of their website, to deceive the Union County New Jersey voters into believing that Plaintiff endorsed the Board of Election candidates featured on the Mailer. *Id.* ¶¶ 1, 92, 114-117.

These allegations allow the Court to reasonably infer that "NJDEMS" has now acquired secondary meaning; however, they do not plausibly show that "NJDEMS" acquired secondary meaning as of March 20, 2009, the date on which Defendants allegedly registered "NJDEMS.com." TAC ¶ 12. The TAC's only allegation predating Defendants' use is that "[t]he mark 'NJDEMS' has been the name of Plaintiff's website since at least December 25, 1996." *Id.* ¶ 36. Without more, the Court cannot reasonably infer public recognition as of March 20, 2009. For example, Plaintiff does not allege how many users visited Plaintiff's website, nor does Plaintiff allege that the mark was prominently featured (or featured at all) on the website itself prior to March 20, 2009. And while Plaintiff alleges generally that "NJDEMS" is used in association with various campaign distributions throughout New Jersey, the pleadings do not allege whether these

---

[15] Plaintiff's Facebook page was created on August 2, 2009, Plaintiff's Twitter account was created in June 2010, and Plaintiff's Instagram account was created in March 2019.

13

distributions pre-date March 20, 2009, and if so, the volume of the distributions pre-dating Defendants' use (for example, by alleging how many individuals or households were on Plaintiff's mailing list, and how often such mailings were sent). While Plaintiff does not necessarily need to plead each one of these facts, without more pertaining to the scope and volume of Plaintiff's use of "NJDEMS" prior to Defendants' use, the Court cannot reasonably infer secondary meaning in the minds of the consuming public. *See Commerce Nat. Ins. Services, Inc.*, 214 F.3d at 438 ("A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark."); *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1231–32 (3d Cir. 1978) (the proper test is whether [the plaintiff] had established secondary meaning in the [] market before [the defendant] began using its mark.").

Accordingly, the Court grants Defendants' motion to dismiss the unfair competition claims as to the "NJDEMS" mark and denies Defendants' motion to dismiss the unfair competition claims as to the "New Jersey Democratic Party" mark.[16]

### B. Cybersquatting (Count Two)

Plaintiff also claims that Defendants violated the Anticybersquatting Consumer Protection Act ("ACPA") TAC ¶¶ 104-110. "[C]ybersquatting is the act of registering, in bad faith and to garner profit, on the internet a domain name so similar to a distinctive mark that it is confusing." *Green v. Fornario*, 486 F.3d 100, 103 n. 5 (3d Cir. 2007). To prevail on an ACPA claim, the plaintiff must prove that (1) plaintiff's mark was a distinctive or famous mark entitled to protection at the time of registration; (2) defendants' domain name is "identical or confusingly similar to"

---

[16] *See Buying For The Home*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006) ("Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law, the Court's analysis [above] extends to Plaintiff's state law claims as well.").

14

plaintiff's mark; and (3) defendants registered the domain name with the bad faith intent to profit from the mark. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

For the same reasons outlined in its prior Opinion, D.E. 29 at 16-18, which the Court adopts and incorporates by reference, the Court finds that the TAC adequately pleads the second and third elements—that Defendants' domain name is identical or confusingly similar to Plaintiff's mark and that Defendants registered the domain name with the bad faith intent to profit from the mark.[17] Thus, the Court only considers the first element—whether Plaintiff has alleged sufficient facts to establish that its mark ("NJDEMS") was a distinctive or famous mark at the time Defendants registered their domain name, "NJDEMS.com." 15 U.S.C. §1125(d)(1)(A)(ii)(I) and (II). The following factors may be considered when making this inquiry:

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties.

*Shields*, 254 F.3d at 482 (citing 15 U.S.C. §1125(c)(1)).

---

[17] Defendants appear to acknowledge that the Court's prior decision as to bad faith is the law of the case, citing to *Walker* in support of its argument that "the Court should reconsider its earlier decision" as to bad faith. Def. Reply at 13 (citing *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020). As *Walker* notes, reconsideration of previously decided issues may be warranted "under 'extraordinary circumstances,' such as if new evidence becomes available, a supervening law has been introduced, or the prior decision was 'clearly erroneous and would create manifest injustice.'" *Walker*, 956 F.3d at 170 (citations omitted). Defendants fail to allege, much less establish, that extraordinary circumstances exist to reconsider its prior decision as to bad faith. *See* Def. Br. at 17-18 (conflating the secondary meaning and bad faith analyses); *see also* Def. Reply at 13 (asserting that the "earlier decision was clearly erroneous," without offering support for this assertion, or the assertion that the prior decision "would create manifest injustice.").

As determined above in connection with the unfair competition claims, Plaintiff has not sufficiently pled facts to support a finding that its "NJDEMS" mark acquired secondary meaning before Defendants' use.[18] As a result, the TAC does not plead adequate facts to support a finding that "NJDEMS.org," which incorporates the "NJDEMS" mark, had acquired secondary meaning by March 20, 2009, the date on which Defendants allegedly registered "NJDEMS.com." TAC ¶ 12. Thus, Defendants' motion to dismiss Count Two (cybersquatting) is granted.

### C. Violation of Corporate Name Statute (Count Six)

Plaintiff also asserts a corporate name claim pursuant to New Jersey law. Under N.J. Stat. Ann. § 15A:2-2, a nonprofit's corporate name "[s]hall not be the same as, or confusingly similar to, the corporate name of any domestic corporation" unless that corporation or corporate entity has provided appropriate written consent or a court has rendered a final judgment establishing the prior right of the corporation to use the name in this state. N.J. Stat. Ann. §15A:2-2(a)(2). A nonprofit's corporate name is "confusingly similar" where the name being used by defendant has widespread recognition such that "[i]t may well be assumed by the public that any unit bearing that name is part of the larger organization and shares its prestige." *See New Jersey Ass'n for Child. with Learning Disabilities v. Burlington Cnty. Ass'n for Child. with Learning Disabilities*, 163 N.J. Super. 199, 208, (Ch. Div. 1978), *aff'd in part, rev'd in part on other grounds*, 174 N.J. Super. 149,

---

[18] The cases that Plaintiff relies on are distinguishable for this reason. *See* Plf. Opp. at 26 (citing *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 407-08 (D.N.J. 2010) (accepting as true the allegation that the "Optimum" mark was registered and incontestable, and in turn, finding that the domain name including such mark was entitled to protection); *Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. 17-5358, 2018 WL 1169132, at *4 (D.N.J. Mar. 6, 2018) (finding that the "Emerson" mark was "valid and legally protectable" through its trademark registration, and thus, that the pleadings sufficiently alleged that the domain name containing such mark was entitled to protection); *Edison Motor Sales, LLC v. Dibre Auto Grp., LLC*, No. 12-239, 2012 WL 5199764, at *8 (D.N.J. Oct. 19, 2012) (finding that the plaintiff sufficiently pled that the "Nissan" mark was distinctive, and accordingly, that the domain name containing this mark was distinctive and entitled to protection).

(App. Div. 1980) (enjoining defendants from using the title "Burlington County Association for Children with Learning Disabilities," because the name "Association for Children With Learning Disabilities," had "nationwide recognition" and thus created confusion about defendant's affiliation with the plaintiff).

The Court previously denied Defendants' motion to dismiss Plaintiff's corporate name claim, finding Plaintiff's allegations sufficient to support a finding that the name of Defendants' nonprofit corporation, "New Jersey Democratic Party A NJ Nonprofit Corporation" is confusingly similar to Plaintiff's corporate name, "The Democratic Party of NJ, Inc., organized as the New Jersey Democratic State Committee."[19]  For the same reasons articulated in its October 4, 2022 Opinion, D.E. 29 at 18-19, which the Court adopts and incorporate by reference, Defendants' motion to dismiss Count Six is denied.[20]

## IV.   CONCLUSION

Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part.**  As to Counts One and Two, Defendants' motion is **GRANTED**.   As to Counts Three, Four, and Five,

---

[19] Defendants appears to acknowledge that the Court's prior decision is the law of the case, but suggest in their Reply that the Court revisit its decision, stating that "Defendants contend that the Court failed to fully appreciate the court precedent as to the Corporate Name Statute."  Def. Reply at 13.  This statement certainly does not establish that "extraordinary circumstances" exist to warrant reconsideration.  Nor do the arguments set forth in Defendants' brief, which, apart from a few changed words and deleted sentences, appear to be copied and pasted from their prior motion to dismiss.  *Compare* D.E. 20-1 at 38-39; D.E. 37-1 at 30-31.

[20] Defendants also seek attorneys' fees under 15 U.S.C. § 1117(a).  Def. Br. at 28-30.  The Lanham Act permits the award of attorneys' fees to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).  Because Defendants are not the "prevailing party" this request is premature.  Additionally, the Court notes that based on the arguments made in support of this request (pertaining to amending the complaint and requesting a discovery conference), this does not appear to be an "exceptional case."  *See Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 230 (3d Cir. 2009) (quoting *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) ("Exceptional cases involve culpable conduct on the part of the losing part, such as bad faith, fraud, malice, or knowing infringement.").

Defendants' motion is **GRANTED** as to the "NJDEMS" mark and **DENIED** as to the "New Jersey Democratic Party" mark. Counts Two, Three, Four, and Five[21] are dismissed without prejudice to allow Plaintiff an opportunity to file an amended pleading which cures the deficiencies noted herein.[22] Plaintiff has thirty (30) days to file another amended complaint, and if it does not do so, the dismissal of such Counts will be with prejudice. Defendants' motion is otherwise **DENIED**. An appropriate Order accompanies this opinion.

Dated: June 7, 2023

_____<br>John Michael Vazquez, U.S.D.J.

---

[21] To be clear, Counts Three, Four, and Five are only dismissed as to the "NJDEMS" mark—not the "New Jersey Democratic Party" mark.

[22] Count One is dismissed with prejudice because Plaintiff does not oppose dismissal. Plf. Opp. at 3 n.1.