NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE DEMOCRATIC PARTY OF NEW JERSEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES DEVINE, et al., <br><br> Defendants. | Civil Action No. 22-01268-JXN-AME <br><br> **REPORT and RECOMMENDATION** |

**ESPINOSA, U.S.M.J.**

This matter is before the Court upon two separate motions by Plaintiff The Democratic Party of New Jersey, Inc., seeking sanctions against the four defendants in this action, pursuant to Federal Rule of Civil Procedure 37. The first motion, filed December 13, 2024, seeks sanctions against pro se Defendant Lisa McCormick; NJDEMS.com; and the New Jersey Democratic Party A New Jersey Nonprofit Corporation. [D.E. 146]. The second motion, filed March 28, 2025, seeks sanctions against pro se Defendant James Devine. [D.E. 151]. Together, the motions seek to strike the Defendants' Answer and request that default be entered against them. [D.E. 146, 151]. None of the Defendants has filed written opposition or otherwise requested to be heard, despite the Court providing opportunities to appear. This Court has reviewed the record, and for the following reasons, respectfully recommends that the District Court strike Defendants' Answer and grant Plaintiff leave to seek entry of default and thereafter to file a motion for default judgment pursuant to Federal Rule of Civil Procedure 55.

1

I. **BACKGROUND**

Plaintiff The Democratic Party of New Jersey, Inc. ("Plaintiff") originally filed this action against Defendants James Devine ("Devine"); Lisa McCormick ("McCormick"); NJDEMS.com; and New Jersey Democratic Party A NJ Nonprofit Corporation ("NJDP") (together, "Defendants") in New Jersey Superior Court, asserting various causes of action arising out of Defendants' alleged creation and dissemination of mailers that implied Plaintiff endorsed or was affiliated with certain candidates for local political positions. It appears NJDP was a non-profit organization organized under the laws of New Jersey and that Devine was its registered agent and a trustee or officer, but its active status was revoked in October 2012, for failure to file annual reports. [*See* Declaration of Leonard S. Spinelli, D.E. 146-1 at 2, ¶¶ 4-6]. NJDEMS.com appears to be an "'unincorporated association' and/or a trade name of [NJDP]" with Devine being the owner and registrant. [D.E. 146-1 at 2, ¶¶ 4, 7].

On March 8, 2022, Defendants removed the case to federal court. [*See* D.E. 1]. After a series of motions to dismiss and denial of Defendants' request to stay discovery, the Court issued a Pretrial Scheduling Order on January 13, 2023. [D.E. 48]. Defendants again moved for a stay of discovery, [*see* D.E. 51], which this Court granted. [*See* D.E. 63]. Then, after the District Court granted in part Defendants' motion to dismiss, providing Plaintiff an opportunity to file an amended complaint, Plaintiff filed a Fourth Amended Complaint (the "FAC") on August 24, 2023, which is the operative complaint in this matter. [*See* D.E. 68, 69, and 84]. Plaintiff seeks relief under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1, *et seq*. [*See* D.E. 84 at 21-27]. Plaintiff also asserts claims for unfair competition under New Jersey statute as well as under common law. [*See id.* at 23]. Discovery resumed, and the Court entered an amended scheduling order on October 5, 2023.

[D.E. 90]. After the District Court denied their fourth motion to dismiss the complaint, Defendants filed their Answer on May 31, 2024. [*See* D.E. 118 and 120].

Shortly after discovery resumed, the parties encountered several discovery disputes, the first of which they submitted to the Court for resolution on December 18, 2023, and on which the Court held argument on December 19, 2023. [*See* D.E. 93 and 102]. On December 20, 2023, the Court compelled Defendants to produce certain documents, including credit card and bank account statements, related to NJDEMS.com and the mailers at issue in this matter. [D.E. 94]. Instead of complying with that Order, Defendants filed a one-page letter, requesting more time to file a motion for its reconsideration and asserting they did not believe they should have to produce certain discovery. [*See* D.E. 95]. Plaintiff filed a letter on March 7, 2024, detailing Defendants' "continued failure to comply with their discovery obligations." [D.E. 103]. After hearing the parties' respective positions about this dispute, the Court issued another Order on April 23, 2024, again compelling Defendants to produce bank account and credit card records related to the mailers by April 29, 2024. [D.E. 116]. Defendants did not produce these records by that date. [*See* Spinelli Decl., D.E. 151-2 at 4, ¶ 14]. In a July 8, 2024 letter to the Court, Plaintiff explained that, in June 2024, it again requested that Defendants cure previously-identified document production deficiencies, which Defendants ignored. [D.E. 121].

Before the Court could address these discovery issues at a status conference, however, then-counsel of record, Desha Jackson, of the Desha Jackson Law Group, LLC ("Former Defense Counsel"), filed a motion to withdraw as attorney on July 15, 2024. [D.E. 126]. The Court granted that motion on August 30, 2024 (the "August 30 Order") and provided Defendants thirty days for substitute counsel to enter an appearance on their behalf, otherwise Defendants James Devine and Lisa McCormick would be deemed pro se. [D.E. 131]. The August 30 Order

3

also explained that Defendants NJDEMS.com and NJDP (together, the "Corporate Defendants") were entities that could not represent themselves in federal court and, if substitute counsel did not appear on their behalf, they could face sanctions, including entry of default against them. [*Id.*]. On September 17, 2024, Former Defense Counsel filed proof of service of the August 30 Order on all Defendants, which also contained information for the next status conference on October 3, 2024. [*See* D.E. 131 and 133].

Despite receiving notice, no Defendants appeared at the next two status conferences in this matter, which were held on October 3, 2024, and October 15, 2024. [*See* D.E. 133, 137, 138, 139]. The Court held another status conference on November 4, 2024, at which Devine appeared pro se but McCormick failed to appear, despite receiving notice. [*See* D.E. 139 and 142]. The Court held two more status conferences, on December 17, 2024, and on February 19, 2025, and McCormick failed to appear at both. To date, Defendants NJDEMS.com and NJDP (together with McCormick, the "Non-Appearing Defendants") have not secured counsel. On November 13, 2024, the Court granted Plaintiff leave to pursue any remedies it deemed appropriate against the Non-Appearing Defendants—who have now failed to appear for five consecutive conferences, but, by then, had failed to appear for three consecutive conferences. [D.E. 142].

After Devine's pro se appearance at the November 4 status conference, Plaintiff sent letters to Devine that outlined outstanding discovery deficiencies on November 25, 2024, and again on December 4, 2024. [Spinelli Decl., D.E. 151-2 at 5, ¶ 17]. After Devine produced only some of the requested documents, Plaintiff identified continued deficiencies in a letter to the Court on December 12, 2024. [D.E. 144]. In response, Devine asserted he could not produce the requested information "because [he had] been lax in keeping records that are not required" and that "dealing with such minimal amounts of money absolve[d] [him] of rigorous record keeping

4

requirements." [*Id.* at 6]. During conferences on November 4, and December 17, 2024, the Court reminded Devine of his discovery obligations, explaining that he must produce documents the Court had already deemed relevant and had previously compelled, and that he cannot withhold certain documents based on his own assertion of what is relevant. [*See* November 4, 2024 status conference[1]; *see also* Transcript of December 17, 2024 status conference, D.E. 149 at 12:5-12]. On December 20, 2024, the Court permitted Plaintiff to depose Devine to allow the parties to better identify and narrow any remaining deficiencies. [*See* D.E. 147; *see also* D.E. 149 at 25:1-19].

At the deposition on January 21, 2025, Devine refused to meaningfully answer any questions, instead asserting his "Fifth Amendment right to remain silent" in response to each inquiry, which prompted Plaintiff's counsel to request Court intervention. [Spinelli Decl., D.E. 151-2 at 5, ¶ 21; *see generally* 151-3 at 30-35]. Devine provided some answers after the Court again reminded him of his discovery obligations, and Plaintiff requested additional documents based on those answers. [Spinelli Decl., D.E. 151-2 at 6, ¶¶ 21-22]. On both February 4, and February 7, 2025, Plaintiff again requested these documents and again requested documents responsive to previously identified deficiencies. [Spinelli Decl., D.E. 151-2 at 6, ¶¶ 23-24]. Devine produced some documents on February 18, 2025, to which Plaintiff responded with another deficiency letter on February 24, 2025. [Spinelli Decl., D.E. 151-2 at 6, ¶ 24 and 8, ¶ 31]. Despite subsequent correspondence with Devine, including an email on March 20, 2025, Plaintiff asserts that, to date, Devine has "produced no further information in response to

---

[1] The Court held the November 4, 2024 status conference on the record. At the time of this Report and Recommendation, however, the transcript of that conference was not yet available, and all citations to discussions during that conference rely on the recording. The transcript of the November 4 conference will be entered on the docket forthwith.

5

Plaintiff's numerous requests and this Court's orders compelling production of same." [D.E. 151-1 at 9; Spinelli Decl., D.E. 151-2 at 10, ¶ 35].

Plaintiff describes the discovery responses and document production Devine has provided thus far as incomplete and inconsistent with his previous statements. [*See*, *e.g.*, Spinelli Decl., D.E. 151-2 at 6-7, ¶¶ 24-28]. For example, Plaintiff's November 25, 2024 deficiency letter explained that Devine "provided 8 pages of incomplete credit card and bank statements," including only the first pages of documents that indicated they were "Page 1 of 2," and statements that contained "only 3 out of 4 total pages." [*See* D.E. 151-3 at 3]. In response to the Court's warnings and to many of Plaintiff's requests and correspondences, Devine has maintained that he cannot produce the discovery requested, because he did not maintain organized records for the information requested during the relevant period, and he does not have the "resources to perform a search" for the requested discovery. [*See*, *e.g.*, Spinelli Decl., D.E. 151-2 at 7, ¶ 27; D.E. 144 at 6; D.E. 151-4]. The Court has explained to Devine that disorganization is an insufficient excuse for failing to produce relevant discovery. [*See* February 19, 2025 status conference[2]].

On December 13, 2024, Plaintiff filed a motion for sanctions against the Non-Appearing Defendants pursuant to Rule 37 for McCormick's failure to appear or otherwise defend this action and for the Corporate Defendants' failure to have substitute counsel enter an appearance on their behalf. [D.E. 146-2 at 4-5]. Plaintiff argues McCormick has "exhibited a pattern of willful and dilatory refusal to participate in this case" since withdrawal of Former Defense Counsel and bears personal responsibility for such failure. [D.E. 146-2 at 7-8]. Plaintiff asserts

---

[2] The Court held the February 19, 2025 status conference on the record. At the time of this Report and Recommendation, however, the transcript of that conference was not yet available, and all citations to discussion during that conference rely on the recording. The transcript of the February 19 conference will be entered on the docket forthwith.

the Corporate Defendants have disregarded and continue to disregard their discovery obligations and furthermore cannot represent themselves in this litigation. [D.E. 146-2 at 8-9].

Plaintiff filed a motion for sanctions against Devine on March 28, 2025, arguing that "[b]y his own admission, Devine has refused to perform even a perfunctory search for responsive text messages, communications, documents or e-mails responsive to Plaintiff's repeated demands for same, citing his 'disorganized records.'" [D.E. 151-1 at 10]. Plaintiff further argues that Devine's "dilatory tactics have wholly frustrated [its] ability to prosecute this case" and emphasizes Devine's failure to comply with his most basic discovery obligations even in the face of numerous court orders. [*Id.* at 11].

Plaintiff consequently requests the Answer for all Defendants be stricken and default be entered against them. [D.E. 146-2 at 4; D.E. 151-1 at 4]. To date, neither the Non-Appearing Defendants nor Devine have filed any opposition to the motions for sanctions against them.

**II.    DISCUSSION**

Federal Rule of Civil Procedure 37 authorizes the imposition of sanctions for a party's "failure to comply with a Court Order," and, specifically, "for not obeying a discovery Order." Fed. R. Civ. P. 37(b). Rule 37(b) makes various sanctions available to the Court, including without limitation "striking pleadings in whole or in part;" "dismissing the action or proceeding in whole or in part;" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A) (enumerating sanctions). Although the Court has "broad discretion" in determining the "type and degree of sanctions it can impose," the sanctions "must be just and related to the claims at issue." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006).

In *Poulis v. State Farm Fire & Casualty Company*, the Third Circuit recognized that "dismissals with prejudice or defaults are drastic sanctions . . . to be reserved for extreme cases." 747 F.2d 863, 867 (3d Cir. 1984) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). *Poulis* thus identified six factors a court must generally consider before imposing such sanctions. *Id.* at 868.[3] They are:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Id.* (emphasis in original). Although each factor must be applied, no single consideration is determinative, and the Court may impose the sanction of dismissal or default even when all six *Poulis* factors are not satisfied. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir. 2003); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). The Third Circuit has held that "the decision [to dismiss or enter default] must be made in the context of the district court's extended contact with the litigant." *Mindek*, 964 F.2d at 1373. Whether to impose such sanctions is ultimately a matter of the district court's discretion. *Id*.

---

[3] Some courts in this district have observed that a *Poulis* analysis is unnecessary where a party has willfully abandoned his or her case. *See, e.g., Kubo v. Rossi*, Civ. No. 09-4771, 2012 WL 1716240, at *2 (D.N.J. Apr. 25, 2012) ("Although this Court is generally required to engage in a full analysis of the *Poulis* factors, in cases where a party willfully abandons his case, or makes adjudication of a matter impossible, *Poulis* balancing is unnecessary.") (citing *Spain v. Gallegos*, 26 F.3d 439, 454–55 (3d Cir.1994)); *First Nat'l Bank of Arizona v. Majestic Home Mortg.*, Civ. No. 02-2935, 2007 WL 2416452, at *4 (D.N.J. Aug. 21, 2007) (noting a party's pleadings may be stricken, without consideration of the *Poulis* factors, in view of her apparent abandonment of the case). Here, the Non-Appearing Defendants' repeated noncompliance with their obligations to participate in Court conferences and failure to provide outstanding discovery responses may be fairly construed as an abandonment of their defense of this action. Nevertheless, affording more respect to this matter than the Non-Appearing Defendants have elected to muster, the Court will apply the *Poulis* factors to evaluate the nature and degree of sanctions that may be warranted.

1. **<u>Defendants' Personal Responsibility</u>**

The first factor, the party's personal responsibility, weighs in favor of striking Defendants' Answer. Defendants have neglected their obligations related to the defense of this action, particularly after counsel's withdrawal, making it clear they bear personal responsibility for the noncompliance. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F. 2d 912, 920 (3d Cir. 1992) (finding first prong of *Poulis* analysis militated in favor of sanctioning defendants, reasoning they were personally responsible for the conduct of the litigation after their counsel withdrew), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). Courts in this District have explained that "[p]ro se litigants, like all litigants, must comply with Court orders," and "[w]hen they flout that obligation, they, like all litigants, must suffer the consequences of their actions." *Harrington v. All Am. Plazas, Inc.*, No. 08-3848, 2010 WL 2710573, at *2 (D.N.J. July 7, 2010) (citing *Burns v. Glick*, 158 F.R.D. 354, 356 (E.D. Pa. 1994)) (internal quotations omitted).

  a. **The Non-Appearing Defendants**

Despite receiving notice, [*see* D.E. 131 and 137], the Corporate Defendants are personally responsible for their lack of participation and have failed to obtain counsel, thereby disregarding this Court's Orders, including the August 30 Order, which made clear that legal entities cannot represent themselves in federal court. Similarly, despite notice and numerous opportunities to appear, McCormick has failed to carry her personal responsibility for participating and defending this action. In sum, all Non-Appearing Defendants have ignored numerous Court Orders by failing to appear at five scheduled status conferences since withdrawal of Former Defense Counsel. What is more, even before Former Defense Counsel's withdrawal, the record reflects the Non-Appearing Defendants' dilatory responses to various

written discovery demands served by Plaintiff. [*See* D.E. 92, 93, 94, 95, 103, 116, and 121]. The Non-Appearing Defendants fully bear personal responsibility for their conduct in this action, and the record demonstrates they have continuously and consistently flouted this obligation.

### b. Defendant James Devine

Devine's personal responsibility in failing to abide by Court Orders both while he was represented by counsel and now as he appears pro se weighs in favor of striking his Answer. As previously mentioned, even before Former Defense Counsel's withdrawal, the record reflects that Devine informed Former Defense Counsel "he doesn't believe he should have to turn over certain discovery," in complete disregard of this Court's December 20, 2023 Order compelling the discovery in question. [*See* D.E. 95]. Now proceeding pro se, Devine is fully responsible for his own conduct, *see Parker v. Pennstar Bank, NBT*, 436 F. App'x 124, 126 (3d Cir. 2011), and continues to defy Court Orders, continues to defy directives the Court has provided during status conferences, and continues to fail to exercise diligence and integrity in meeting his discovery obligations. [*See*, *e.g.*, D.E. 144 and 148; *see generally* 151-3 at 30-35].

### 2. <u>Prejudice to Plaintiff</u>

The second factor, prejudice to Plaintiff, also weighs in favor of ordering that the Answer be stricken. The Third Circuit has explained that prejudice in this context does not mean "irremediable harm." *Ware*, 322 F. 3d at 222; *see also Herrera v. Live Oak Landscape Contractors, Inc.*, No.20-7330, 2022 WL 2276743, at *2 (D.N.J. Apr. 20, 2022). To determine whether a party's failure to meet his litigation responsibilities has caused the opposing party prejudicial harm, the Court considers whether the misconduct "imped[es] a party's ability to prepare effectively a full and complete trial strategy." *Ware*, 322 F.3d at 222. "Prejudice also includes deprivation of information through noncooperation with discovery, and costs expended

obtaining court orders to force compliance with discovery." *Harrington*, 2010 WL 2710573, at * 3 (quoting *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund*, 29 F. 3d 863, 874 (3d Cir. 1994)).

### a. The Non-Appearing Defendants

The Non-Appearing Defendants' continued disregard for their discovery obligations prevents Plaintiff from obtaining essential information required to prove its factual allegations, explore potential damages, and investigate the asserted affirmative defenses. Although discovery did not commence until almost a year after this case was removed to federal court and was stayed for a period of a few months pending decision on Defendants' fourth motion to dismiss, the record demonstrates that, from December 2023, through the filing of the motion for sanctions against them in December 2024, Plaintiff has repeatedly requested relevant discovery related to issues at the center of this lawsuit, and the Non-Appearing Defendants have been uncooperative in responding to those requests, even in the face of Court Orders directing them to produce such items. Additionally, nearly a year has passed since Former Defense Counsel's withdrawal, and the Corporate Defendants have not obtained substitute counsel and McCormick has failed to participate at all. In sum, the Non-Appearing Defendants' failure to engage in litigation has prevented Plaintiff from prosecuting its claims and has impeded efforts to pursue the rights and remedies asserted in its Amended Complaint, resulting in prejudice.

### b. Defendant James Devine

The second *Poulis* factor weighs in favor of striking Devine's Answer for the same reasons it weighs in favor of striking the Non-Appearing Defendants' Answer. Devine's continuous failure to comply with his discovery obligations has unnecessarily protracted discovery in this matter and has frustrated Plaintiff's efforts to obtain information relevant to its

factual allegations. For example, the record reflects that Plaintiff requested documents related to how Defendants funded the mailers at issue in this matter as soon as discovery began in 2023, [*see* Plaintiff's First Set of Document Requests dated February 10, 2023, D.E. 151-3 at 13-16], but to date, and despite numerous Court Orders compelling such production, Devine has provided incomplete production, including documents with missing pages, prompting Plaintiff to repeatedly request that Devine address such deficiencies. [*See* D.E. 151-3 at 2-3; D.E. 151-3 at 37]. To allow Plaintiff to more efficiently and effectively identify what remains in fact discovery, the Court ordered Devine's deposition. [*See* D.E. 147; Spinelli Decl., D.E. 151-2 at 5-6, ¶ 20]. Devine proved obstructive in this effort as well, initially refusing to provide any meaningful answers to Plaintiff's questions, asserting in every response his "Fifth Amendment right to remain silent," and only answering some questions after Court intervention. [*See* Spinelli Decl., D.E. 151-2 at 6, ¶ 21; *see generally* 151-3]. All this has caused prejudice to Plaintiff by rendering it impossible for Plaintiff to obtain the foundational discovery necessary to explore its claims.

### 3. Defendants' History of Dilatoriness

The third factor, which considers Defendants' history of dilatoriness, further supports the imposition of sanctions against them. In *Poulis*, the Third Circuit emphasized the importance of abiding by deadlines and time constraints set by the Federal Rules and by the Court. *Poulis*, 747 F.2d at 868. However, it also made clear that only a pattern of dilatoriness would weigh in favor of striking a party's pleading. *Id.*

#### a. The Non-Appearing Defendants and Defendant James Devine

Here, that pattern is consistent and manifest. As outlined above, since discovery began and resumed in 2023, the Non-Appearing Defendants have introduced needless and undue delay into this action through their disregard for their discovery obligations and this Court's Orders

concerning discovery; the Corporate Defendants' disregard for the requirement that they be represented by counsel; and McCormick's failure to attend a single case-management conference since withdrawal of Former Defense Counsel. Devine has likewise exhibited dilatoriness throughout discovery: examples include his apparent refusal to provide documents requested by his own counsel, initial failure to appear at status conferences after she withdrew, and his continued failure to provide complete responses to discovery requests because of his own disorganization. This has all caused unnecessary and undue delay. In sum, the conduct of all Defendants in the past two years has done nothing but unacceptably impede any progress toward a resolution of the claims and defenses at issue in this action.

4. **Willfulness or Bad Faith**

Fourth, the willfulness or bad faith of the party to be sanctioned weighs heavily in favor of striking Defendants' Answer.

   a. **The Non-Appearing Defendants**

The record reflects that Former Defense Counsel served the motion to withdraw on the Non-Appearing Defendants via email as well as through mail at their last known address. [D.E. 130]. Then, Former Defense Counsel served on the Non-Appearing Defendants the August 30 Order granting withdrawal and explaining their obligation to proceed with this litigation, also at their last known address. [D.E. 133]. Despite the Court's clear warnings of the consequence to the Corporate Defendants of failing to obtain counsel and of the personal obligation on McCormick as a pro se litigant, the Non-Appearing Defendants failed to appear for the October 3, 2024 conference and again for the October 15, 2024 conference. McCormick failed to appear at both the December 17, 2024 and February 19, 2025 conferences. Although Devine, as the apparent agent and trustee or officer of NJDP and the apparent owner and registrant of

NJDEMS.com, was present at the latter two conferences, these Corporate Defendants cannot appear in this matter unrepresented. Each scheduled conference was clearly set by Court Order, issued well in advance of the proceedings and on notice to all parties. Regarding discovery, the record reflects that the Non-Appearing Defendants flouted their discovery obligations early on, [*see* D.E. 95], and, because of their lack of participation and failure to obtain counsel, this disregard continues to date. All this demonstrates the Non-Appearing Defendants' willful disregard of Court Orders and willful abandonment of their defense of this case.

### b. Defendant James Devine

Devine has certainly exhibited willful disregard for his discovery obligations, explaining shortly after discovery resumed that "he doesn't believe he should have to turn over certain discovery." [*See* D.E. 95]. Dilatory and deficient discovery production persisted even after the Court explained to Devine personally during the November 4, 2024 and the December 17, 2024 status conferences that he cannot selectively turn over certain documents and withhold others based on his own unilateral determination of what documents are relevant. [*See* November 24, 2024 status conference; Transcript of December 17, 2024 status conference, D.E. 149 at 12:5-11; D.E. 144; and D.E. 148 at 2]. Issues related to deficient and incomplete production continued after the Court explained during a February 19, 2025 status conference that disorganization is not a plausible or sufficient excuse for his failure to comply with his discovery obligations. [*See* February 19, 2025 status conference].

The Court permitted Devine's deposition as a solution that would accommodate his averments that he no longer had access to some of the information Plaintiff requested while providing Plaintiff the opportunity to obtain discovery relevant to its claims. [*See* D.E. 149 at 21:24-25, 22:1-4]. Even with this understanding, however, [*see* D.E. 149 at 34:2-18], Devine

14

flatly refused to provide substantive answers to Plaintiff's questions, asserting his "Fifth Amendment right to remain silent." [D.E. 151-3 at 30-35]. It is difficult to interpret such conduct as anything but willful and in bad faith. *See Days Inn Worldwide, Inc. v. Shaikh*, 249 F.R.D. 472, 476 (D.N.J. 2008) ("[T]he absence of a reasonable excuse [for failure to comply with court orders] suggests willful conduct or bad faith."); *Ware v. Rodale Press, Inc.*, 322 F. 3d 218, 224 (3d Cir. 2003) (affirming a finding of willfulness and bad faith where "no excuse has been proffered for the excessive procrastination of Plaintiff's counsel."); *Parker*, 436 F. App'x at 127 (affirming dismissal of a pro se party's amended complaint as a sanction for her failure to comply with discovery orders, in part, because she engaged in "gamesmanship," "provided excuse after excuse for failure to comply with orders of the court" which the court found "no longer credible," and "offered only unpersuasive justifications for her conduct."). The Court finds that the fourth *Poulis* factor militates in favor of sanctions.

5. **The Effectiveness of Alternative Sanctions**

Fifth, before concluding the Answer should be stricken, the Court must consider whether any alternative sanctions would be effective. Courts in this District have explained that a party's "nonresponsiveness despite notice of [] proceedings and the consequences . . . demonstrates that no sanction other than striking its Answer and allowing the plaintiff to seek default or default judgment will cure the prejudice." *Temptime Corp. v. Timestrip PLC*, No. 08-4277, 2009 WL 1560205, at *2 (D.N.J. June 2, 2009). This is because "[a]ny other sanction would not address plaintiff's present inability to proceed to a resolution." *Id.*

   a. **The Non-Appearing Defendants and Defendant James Devine**

Here, the history and extent of all Defendants' noncompliance with Court orders and with the Federal Rules governing discovery indicates that lesser sanctions would not be effective. The

Court has provided numerous opportunities for both the Non-Appearing Defendants and Devine to participate in this action. The Non-Appearing Defendants have failed to appear for conferences, failed to engage in discovery, and failed to communicate with opposing counsel and with the Court. As outlined above, Devine continues to frustrate the aims of discovery and to disregard numerous Court Orders pertaining to his discovery obligations. Moreover, both the Non-Appearing Defendants and Devine have failed to respond to Plaintiff's Motions for Sanctions or offer any argument for consequences less severe than striking their responsive pleading. All Defendants have thus displayed an unwillingness to defend against Plaintiff's claims. In light of the foregoing, it does not appear that alternative sanctions would be effective in curing the prejudice to Plaintiff, encouraging Defendants to fulfill their litigation responsibilities, and avoiding further delay in the development of this action towards resolution.

### 6. The Meritoriousness of Any Defenses

Sixth, the meritoriousness of the defenses presents, at best, a neutral factor in this action. Because of the delay all Defendants have caused during fact discovery and their continued refusal to meaningfully participate in the litigation, including their lack of response to the Motion for Sanctions, the Court cannot meaningfully evaluate the potential merits of their defenses against Plaintiff's claims.

On balance, the *Poulis* factors support imposing sanctions on the Non-Appearing Defendants and Devine under Rule 37 for their noncompliance with orders and their discovery obligations. This Court finds, for the foregoing reasons, that striking the Non-Appearing Defendants' and Devine's Answer is an appropriate sanction for their misconduct. Although this is strong medicine, their willful and persistent failure to comply with Court Orders or meaningfully proceed with discovery, together with their lack of any response to the Motion for

Sanctions and the Corporate Defendants' failure to enter an appearance through counsel, strongly suggests they have essentially abandoned any defense of Plaintiff's claims. Under such circumstances, no lesser sanction than striking the Answer and entering default is appropriate. *See, e.g.*, *Pro Custom Solar, LLC v. Castillo*, Civ. No. 19-12469, 2021 WL 7842376, at *1 (D.N.J. Mar. 8, 2021) (finding the defendants' failure to participate and apparent abandonment of the action warranted sanctions consisting of striking their answer and entering default).

### III.  CONCLUSION

For the foregoing reasons, this Court concludes that Rule 37 sanctions against Defendant James Devine and Non-Appearing Defendants Lisa McCormick, NJDEMS.org, and the NJDP are warranted. The Court respectfully recommends that the District Court strike these Defendants' Answer and provide Plaintiff with leave to seek entry of default and default judgment against them pursuant to Federal Rule of Civil Procedure 55.

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and L. Civ. R. 72.1(c)(2), the parties may file and serve objections to this Report and Recommendation within fourteen days of service of a copy thereof.

The Clerk of Court is directed to serve the parties with electronic notice upon the filing and entry of this Report and Recommendation, to terminate the motion pending at Docket Entries Number 146 and 151, and to activate this Report and Recommendation for the District Court's Review.

                                                           */s/ André M Espinosa*
                                                        ANDRÉ M. ESPINOSA
                                                        United States Magistrate Judge

Dated:  May 16, 2025