**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE DEMOCRATIC PARTY OF NJ, INC., *organized as* THE NEW JERSEY DEMOCRATIC STATE COMMITTEE,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES DEVINE, *et al.*,<br><br>    Defendants. | Civil Action No. 22-1268 (JXN)(AME)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Plaintiff, The Democratic Party of NJ, Inc. ("Democratic Party"), organized as The New Jersey Democratic State Committee's ("Committee") (together, "Plaintiff") motion for entry of default judgment pursuant to Federal Rule of Civil Procedure[1] 55(b)(2) against *pro se* Defendants James Devine ("Devine") and Lisa McCormick ("McCormick"); and Defendants NJDEMS.com and the New Jersey Democratic Party A NJ Nonprofit Corporation ("NJDP") (collectively, "Defendants"). (ECF No. 162.) Devine opposed. (ECF No. 165.) The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion for default judgment is **GRANTED**.

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.    BACKGROUND

### A.    Statement of Facts[2]

#### i.    The Committee

The Committee is the "sole statewide committee authorized" by state law to represent the Democratic Party in New Jersey. (Fourth Am. Compl. ("FAC") ¶ 22, ECF No. 84.) The Committee maintains the Democratic Party's "political organization and management" and sets the Democratic Party's "standards, ideologies, and preferences to maintain the unity of the party throughout the state and give voters a clear depiction of who the party is, what it stands for, and who its standard bearers are." (*Id.*) Since 1984, the Committee has consistently used the mark "New Jersey Democratic Party" "in campaign materials, press releases," and other forms of communication. (*Id.* ¶¶ 31–32.) Third parties now know the Committee as, and refer to the Committee almost exclusively as, the "New Jersey Democratic Party." (*Id.* ¶ 33.)

The Committee has also regularly used the "NJDEMS" mark on mailers and envelopes since at least 1990; for its email addresses since at least 2003; for fax correspondence since the early 2000s; and on various social media platforms since their advent. (*Id.* ¶¶ 42–51.) The term "NJDEMS" is associated "exclusively" with the Committee beginning "well prior to 2009." (*Id.* ¶ 39.) The Committee owns and operates NJDEMS.org, which it established in 1996. (*Id.* ¶¶ 24, 36–39.) Through NJDEMS.org and other forms of communication, the Committee endorses candidates for office and adopts Democratic Party platforms. (*Id.* ¶ 25.)

---

[2] In evaluating a motion for default judgment, the Court "should accept as true the well-pleaded factual allegations of the complaint, but need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Newman v. Axiom Worldwide*, No. 06-5564, 2010 WL 2265227, at *2 (D.N.J. June 2, 2010) (citing *Comdyne I, Inc. v. Corbine*, 908 F.2d 1142, 1149 (3d Cir.1990)).

### ii.      *Defendants*

Devine and McCormick live together in New Jersey. (*Id.* ¶¶ 9–11.) They co-own NJDEMS.**com**, which purports to be the website for the "Democratic Party of NJ." (*See id.* ¶¶ 11–13.) Devine incorporated NJDP in 2009, though the state revoked NJDP's active status in 2012 for failure to file annual reports. (*Id.* ¶ 16.) Devine remains the registered agent for and an officer or trustee of NJDP. (*Id.*)

### iii.      *The Mailer*

This lawsuit arose during New Jersey's 2021 general election. (*See id.* ¶ 1.) Shortly after mail-in voting began, Union County voters (especially in Roselle) received a mailer ("Mailer"). (*Id.* ¶¶ 1, 52.) One side of the Mailer had pictures of then-Governor Murphy ("Murphy") and then-Lieutenant Governor Oliver ("Oliver"), candidates the Committee nominated for their respective offices. (*Id.* ¶ 54.) Next to Murphy and Oliver were pictures of three candidates running for the Roselle Board of Education whom the Committee did *not* endorse or support ("School Board Candidates"). (*Id.* ¶¶ 54–55.) The bottom of the page stated, in small print: "Paid for by NJDEMS.COM"; "New Jersey Democratic Party"; and "Not authorized by any candidate or committee." (*Id.* ¶ 56.) The other side of the Mailer had messages of support for and endorsements of the three School Board Candidates, and featured pictures of the School Board Candidates underneath pictures of Murphy and Oliver. (*Id.* ¶¶ 57–58.)

### B.      Procedural History

Plaintiff sued Defendants in New Jersey Superior Court in October 2021, alleging Defendants engaged in a civil conspiracy to violate New Jersey's campaign finance laws, defraud voters, and impersonate Plaintiff. (*See* ECF No. 1-1 at *45–47.[3]) Plaintiff amended the complaint,

---

[3] Pincites preceded by an asterisk (*) use ECF pagination.

which included two claims under the Lanham Act, 15 U.S.C. §§ 1125(a), 1125(d). (*See* Am. Compl., ECF No. 1-19.)

Defendants timely removed to this Court in March 2022. (*See* Notice of Removal, ECF No. 1.) Following the submission of a Second Amended Complaint (*see* ECF No. 16), and two motions to dismiss (*see* ECF Nos. 20, 37), which the Court granted in part (*see* ECF Nos. 30, 69), Plaintiff filed a Fourth Amended Complaint in August 2023 (*see* FAC). The Court denied Defendants' motion to dismiss the Fourth Amended Complaint. (*See* ECF No. 118.) The Fourth Amended Complaint includes claims for: (1) cybersquatting, in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) ("Count I"); (2) unfair competition through false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a) ("Count II"); (3) unfair competition, in violation of N.J.S.A. 56:4-1 ("Count III"); (4) unfair competition under New Jersey common law ("Count IV"); and (5) violation of the New Jersey Corporate Name Statute, N.J.S.A. 15A:2-2 ("Count V"). (*See* FAC.)

Discovery followed and disputes arose. (*See* R&R at 3, ECF No. 152.) Magistrate Judge Espinosa twice ordered Defendants to produce responsive "bank account and credit card records" related to the Mailer, but Defendants failed to do so. (*Id.*) Shortly thereafter, Defendants' attorney moved to withdraw as counsel in July 2024. (*Id.*) Judge Espinosa granted the motion in an August 30, 2024 Order. (*Id.*; *see also* Aug. 30 Order, ECF No. 131.) The Order gave Devine and McCormick thirty days to find substitute counsel and advised that NJDEMS.com and NJDP "were entities that could not represent themselves in federal court and, if substitute counsel did not appear on their behalf, they could face sanctions, including entry of default against them." (R&R at 4.) Defendants did not timely obtain substitute counsel. (*Id.*) Devine and McCormick proceeded *pro se*. (*Id.*)

4

Defendants did not appear at the next two status conferences on October 3 and October 15, 2024. (*Id.*) Of the Defendants, only Devine attended the next three status conferences on November 4, 2024, December 17, 2024, and February 19, 2025. (*Id.*)

Devine remained deficient in his discovery obligations. (*Id.*) During the November 4 and December 17, 2024 status conferences, Judge Espinosa reminded Devine that he "must produce documents the Court had already deemed relevant and had previously compelled, and that he cannot withhold certain documents based on his own assertion of what is relevant." (*Id.* at 5.) Three days later, Judge Espinosa "permitted Plaintiff to depose Devine to allow the parties to better identify and narrow any remaining deficiencies." (*Id.*) At his January 21, 2025 deposition, however, Devine "assert[ed] his 'Fifth Amendment right to remain silent' in response to each inquiry." (*Id.*) Plaintiff moved for sanctions, requesting Defendants' answer be stricken and "default be entered against them." (*Id.* at 7.) Judge Espinosa granted the motions in a May 16, 2025 Report and Recommendation ("R&R"). (*See id.*) After Defendants failed to timely object, the Court adopted the R&R on June 9, 2025. (*See* June 9, 2025 Order, ECF No. 154.)

Plaintiff obtained Clerk's entry of default on June 30, 2025, and moved for default judgment on October 27, 2025. (*See* Mot. Default J., ECF No. 162.) Plaintiff seeks (1) to permanently enjoin Defendants from using the names "New Jersey Democratic Party" or "NJDEMS," or any other similar name; (2) the seizure of the NJDEMS.com domain; and (3) attorneys' fees and costs. (*See* Proposed Order, ECF No. 162-2.) Devine opposed. (Devine Opp'n, ECF No. 163.)

## II.    LEGAL STANDARD

Rule 55(b)(2) permits a party to apply for and the Court to enter default judgment against a party who fails to plead or otherwise defend claims asserted against it. Entering default judgment

is within the Court's discretion but is disfavored because default judgment precludes a ruling on the merits. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984). Before entering default judgment, the Court must find that: (1) "it has jurisdiction both over the subject matter and parties"; (2) "Defendants have been properly served"; (3) the complaint "sufficiently pleads a cause of action"; and (4) "the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015).[4] Then, the Court must consider: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (acknowledging the same "[t]hree factors control whether a default judgment should be granted.").

A defense has merit if the allegations of the defendant's answer, if established at trial, would constitute a complete defense to the action. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citations omitted). Prejudice to plaintiff exists where the plaintiff has no other means of vindicating its claim or obtaining relief. *Husain*, 265 F. App'x at 133 (affirming denial of default judgment where plaintiff "appeared to suffer little, if any, prejudice from the denial of his motion.").

In ruling on a default judgment motion, the Court "must accept as true every 'well-pled' factual allegation of the complaint." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "A court need not,

---

[4] Before a party may move for default, the Clerk must enter default against the non-moving party. Fed. R. Civ. P. 55(a). *See also Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) (noting that entry of default by the Clerk under Rule 55(a) "constitutes a general prerequisite for a subsequent default judgment under Rule 55(b).")

6

however, accept the plaintiff's legal conclusions, nor the plaintiff's assertions concerning damages." *Id.*

## III.    <u>DISCUSSION</u>

### A.    **Plaintiff Meets the Threshold Requirements for Default Judgment**

#### i.    *The Court has Subject Matter Jurisdiction Over the Action*

Federal courts have limited jurisdiction. *Malarik v. Dinunno Enters., Inc.*, 157 F. App'x 536, 537 (3d Cir. 2005). They possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). 28 U.S.C. § 1331 allows the Court to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." An action "arises" under the Constitution or federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

At the time of removal, a federal question appeared on the face of the Amended Complaint. Counts I and II expressly sought relief under 15 U.S.C. §§ 1125(a) and 1125(d). (*See* Am. Compl.) Those federal claims remain in the Fourth Amended Complaint. (*See* FAC.) Accordingly, the Court has subject matter jurisdiction over this action.

#### ii.    *The Court has Personal Jurisdiction over Defendants*

Federal courts may exercise personal jurisdiction over a defendant who is (1) properly served and (2) "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Ngambo v. N.Y. State Dep't of Tax. & Fin.*, No. 24-2545, 2025 WL 1650011, at *2 (3d Cir. June 11, 2025) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Because only state courts have general jurisdiction, the Court looks to the law of the state where it sits: New Jersey. *Id*. The Court, accordingly, has jurisdiction over the parties to the extent provided under New

Jersey law. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey law permits jurisdiction to the fullest extent allowed by the Fourteenth Amendment. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

The personal jurisdiction requirement is a right a defendant can "affirmatively" or "implicitly" waive through their conduct. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019) (citing *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). A party consents to personal jurisdiction if it "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *Id.* (quoting *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994)). Here, it is undisputed that Plaintiff properly served Defendants with process. (*See* Pl.'s Ex. 2, ECF No. 162-5; Devine Opp'n (not disputing proper service of process).) And Defendants extensively litigated in this forum, filing four motions to dismiss and several motions to stay discovery over the course of four years. Moreover, Defendants, who are all based in New Jersey, made and distributed a Mailer to New Jersey voters during a New Jersey election to make it appear as though a New Jersey political party had endorsed certain candidates for elected office in New Jersey. The Court, therefore, readily concludes Defendants "purposefully directed" their conduct at this forum. *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[5]

---

[5] The Court also notes that venue is proper. Venue is proper in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought . . . ., any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b). All Defendants reside in this District.

8

### iii.    The Complaint Establishes Legitimate Causes of Action

Before granting a default judgment motion, "the Court must determine whether the moving party's complaint establishes a legitimate cause of action." *Chanel*, 558 F. Supp. 2d at 537. The Court "should accept as true the well-pleaded factual allegations of the complaint, but need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Newman*, 2010 WL 2265227, at *2 (citing *Comdyne I*, 908 F.2d at 1149).

The Third Circuit applies a three-step framework in evaluating the sufficiency of a complaint. First, the Court identifies "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### a.    Unfair Competition (Counts II, III, IV)

Plaintiff brings claims for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and New Jersey state law. New Jersey state law claims for unfair competition "are so similar to federal standards that courts consider them together for purposes of evaluating liability." *Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475, 2017 WL 5157390, at *3 (D.N.J. Nov. 6, 2017).

The Lanham Act prohibits the use of "any false designation of origin" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

9

of such person with another person, or as to the origin." 15 U.S.C. § 1125(a). To state an unfair competition claim under the Lanham Act, the plaintiff must show: "(1) the plaintiff has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, 652 F. Supp. 3d 481, 492 (D.N.J. 2023) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)).

### 1.    *Plaintiff has Valid and Protectable Marks*

Where, as here, a mark has not been federally registered or achieved incontestability, "validity depends on proof of secondary meaning, unless the unregistered mark is inherently distinctive." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) (citation omitted). "A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark." *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). A mark has secondary meaning when it is "interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 231 (3d Cir. 2017) (quoting *Com. Nat'l*, 214 F.3d at 438).

In determining whether a political organization's mark has secondary meaning, "the inquiry is whether the relevant consuming class—meaning the persons in the relevant geographic area who are interested in that party and its activities—associates the name and insignia of that party with the political organization." *Democratic Party of NJ, Inc. v. Devine*, No. 22-1268, 2022 WL 4976616, at *5 (D.N.J. Oct. 4, 2022) (quoting *Partido Revolucionario Dominicano v. Partido Revolucionario Dominicano*, 312 F. Supp. 2d 1, 13 (D.D.C. 2004)). The Court may consider, among other factors:

10

(1) extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) fact of copying; (5) customer surveys; (6) customer testimony; (7) use of mark in trade journals; (8) size of company; (9) number of sales; (10) number of customers; and, (11) actual confusion.

*Id.* (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)). The Court may also examine "other efforts at creating a conscious connection in the public's mind between the designation and the service." *Id.* (quoting *Am. Diabetes Ass'n, Inc. v. Nat'l Diabetes Ass'n*, 533 F. Supp. 16, 19 (E.D. Pa. 1981), *aff'd,* 681 F.2d 804 (3d Cir. 1982)).

Here, Plaintiff has adequately alleged that, at the time Defendants used the "New Jersey Democratic Party" and "NJDEMS" marks, the marks had secondary meaning. Plaintiff has, for decades, consistently used both marks in its public and political communications (FAC ¶¶ 31–32); third-parties—including New Jersey voters interested in the Democratic Party, the public, and the press—have, for decades, consistently referred to Plaintiff as the "New Jersey Democratic Party" (*Id.* ¶¶ 33–34); and the term "NJDEMS" has also been associated "exclusively" with the Committee since "well prior to 2009." (*Id.* ¶ 39.) Taking the allegations in the Fourth Amended Complaint as true, voters interested in the Democratic Party and the public associate "New Jersey Democratic Party" and "NJDEMS" with Plaintiff. The Court, therefore, concludes that "New Jersey Democratic Party" and "NJDEMS" have acquired secondary meaning, and are valid and protectible marks.

### 2.    *Likelihood of Confusion*

Two marks are "confusingly similar if ordinary consumers would likely conclude that the two products share a common source, affiliation, connection, or sponsorship." *Devine*, 2022 WL 4976616, at *6 (quoting *A & H Sportswear*, 237 F.3d at 216). "While courts may consider many factors when assessing the likelihood of confusion, if 'the trademark owner and the alleged infringer deal in competing goods and services, the court need rarely look beyond the mark itself.'"

11

*Id.* (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983)). "Where the goods are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 679 F. Supp. 3d 53, 95 (D.N.J. 2023) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 712–13 (3d Cir. 2004)). "Even if there is some difference between the marks, if the infringing mark appropriates the entire mark but adds a descriptive word, a likelihood of confusion may exist." *Cosmetic Warriors*, 2017 WL 5157390, at *4; *see also Lapp*, 721 F.2d 460, 463 (finding "Lapp" and "Lapp Cable" functionally identical); *E.A. Sween Co. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 569 (D.N.J. 2014) (finding "DELI EXPRESS" and "DELI EXPRESS OF TENAFLY" identical and likely to confuse consumers).

Here, Plaintiff adequately alleges a likelihood of confusion. Defendants used the "NJDEMS" and "New Jersey Democratic Party" marks on their website and Mailer to falsely imply that Plaintiff endorsed the School Board Candidates, as it had with Murphy and Oliver. More to the point, Plaintiff's "NJDEMS.**org**" mark is identical to Defendants' "NJDEMS.**com**" mark. The only difference is the domain name, which is immaterial. *See Lapp*, 721 F.2d at 463; *E.A. Sween*, 19 F. Supp. 3d at 569. The same is true of Plaintiff's "New Jersey Democratic Party" mark and Defendants' "New Jersey Democratic Party A NJ Nonprofit Corporation" mark. *See E.A. Sween*, 19 F. Supp. 3d at 569. The Court, therefore, concludes that Plaintiff sufficiently states claims for unfair competition.

### b.      Cybersquatting (Count I)

Cybersquatting is "the act of registering, in bad faith and to garner profit, on the internet a domain name so similar to a distinctive mark that it is confusing." *Green v. Fornario*, 486 F.3d 100, 103 n.5 (3d Cir. 2007). To state a cybersquatting claim under the ACPA, the plaintiff must

12

show (1) their mark "was a distinctive or famous mark entitled to protection at the time of registration"; (2) defendants' "domain name is 'identical or confusingly similar to' plaintiff's mark"; and (3) defendants "registered the domain name with the bad faith intent to profit from the mark." *Devine*, 2022 WL 4976616, at *7 (quoting *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

For the same reasons stated above, Plaintiff has adequately alleged the "NJDEMS" mark had secondary meaning and Defendants' "NJDEMS**.com**" domain is identical to Plaintiff's mark. And, as the Court previously found, Plaintiff has established that Defendants acted in bad faith with the intent to profit from the mark. *See id.* at *7–8. The ACPA sets forth nine non-exhaustive factors the Court may consider in determining whether a defendant acted in bad faith. 15 U.S.C. § 1125(d)(1)(B)(i). One key consideration is the defendant's

> intent to divert consumers from the owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

15 U.S.C. § 1125(d)(1)(B)(i)(V). Plaintiff alleges Defendants used "NJDEMS**.com**" to "deceive voters into believing that the candidates depicted on the mailings were actually endorsed or supported by Plaintiff, or were selected as party nominees in Plaintiff's primary election," and "intended to divert the public from NJDEMS**.org** in an effort to mislead voters into believing that NJDEMS**.com** was the official website of Plaintiff." (FAC ¶¶ 1, 111 (emphasis added).) As the Court previously concluded, these allegations are sufficient to establish Defendants' bad faith. *Devine*, 2022 WL 4976616, at *8.

### c.   Corporate Name Statute (Count V)

New Jersey's Corporate Name Statute prohibits any New Jersey corporation from using a name that is "the same as, or confusingly similar to, the corporate name of" another New Jersey corporation without consent or a final court judgment. N.J.S.A. 15A:2-2. A nonprofit's corporate name is "confusingly similar" where the name being used by defendant has widespread recognition such that "[i]t may well be assumed by the public that any unit bearing that name is a part of the larger organization and shares its prestige." *See N.J. Ass'n for Child. with Learning Disabilities v. Burlington Cnty. Ass'n for Child. with Learning Disabilities*, 163 N.J. Super. 199, 208, (Ch. Div. 1978), *rev'd in part on other grounds*, 174 N.J. Super. 149 (App. Div. 1980) (enjoining defendants from using the title "Burlington County Association for Children with Learning Disabilities," because the name "Association for Children With Learning Disabilities," had "nationwide recognition" and thus created confusion about defendant's affiliation with the plaintiff). Plaintiff alleges that "New Jersey Democratic Party A NJ Nonprofit Corporation" is confusingly similar to "The Democratic Party of NJ, Inc.," and that Defendants did so to confuse voters about whom Plaintiff endorsed. As before, the Court concludes Plaintiffs state a corporate name claim.

### B.   Default Judgment is an Appropriate Remedy

### i.   *No Meritorious Defense Exists*

As discussed above, a meritorious defense exists if the "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (citation omitted). Devine, in opposition to default judgment, briefly

14

asserts that (1) the First Amendment protects his conduct and (2) the Lanham Act does not apply to political speech. (Devine Opp'n at *4–5.)

Defendants made these same arguments when they moved to dismiss the Amended Complaint. *Devine*, 2022 WL 4976616, at *2–3 (D.N.J. Oct. 4, 2022). The Court carefully considered and rejected both arguments. *Id.* (concluding that "services" under the Lanham Act, include those provided by a political party, and that First Amendment does not protect use of a political party's mark where it is likely to cause significant consumer confusion). The Court declines to revisit its earlier ruling, which was correct. *Def. Distributed v. Att'y Gen. of N.J.*, 167 F.4th 65, 74 (3d Cir. 2026) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

Devine also argues that Plaintiff's lawsuit violates New Jersey's "anti-SLAPP" statute, the Uniform Public Expression Protection Act ("UPEPA"), N.J.S.A. 2A:53A-20, *et seq*. Not so.

Strategic lawsuits against public participation ("SLAPPs") "are lawsuits filed to punish, silence, and intimidate defendants exercising their First Amendment rights." *Paucek v. Shaulis*, 349 F.R.D. 498, 509 (D.N.J. 2025). SLAPPs "force a defendant to abandon his speech or suffer through years of costly litigation." The UPEPA applies to any cause of action asserted against a person based on their "exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. 2A:53A-50(b)(3). The law provides:

> Not later than 60 days after a party is served with a petition or complaint, crossclaim, counterclaim, third-party claim, or other pleading that asserts a cause of action to which this act applies or at a later time on a showing of good cause, the

15

party may file an application for an order to show cause with the court to dismiss the cause of action or part of the cause of action.

N.J.S.A. 2A:53A-51. And UPEPA requires courts to "award court costs, reasonable attorney's fees, and reasonable litigation expenses related to the order to show cause" to the prevailing party. N.J.S.A. 2A:53A-58

Devine's anti-SLAPP argument fails for at least three independent reasons. First, UPEPA applies only to "a civil action filed or cause of action asserted in a civil action on or after" October 7, 2023. *See* L.2023, c. 155, § 14. Plaintiff filed the Fourth Amended Complaint in August 2023. Second, "neither political nor commercial speech will 'fall under the auspices of the First Amendment' where use of the plaintiff's mark is likely to cause significant consumer confusion. *Devine*, 2022 WL 4976616, at *3 (quoting *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 93 (2d Cir. 1997)). Accordingly, Devine did not engage in conduct protected by the First Amendment. Third, even if UPEPA applied to the Fourth Amended Complaint *and* Devine engaged in protected expression, he did not file an Order to Show Cause within sixty days of being served. The Court, therefore, concludes no meritorious defense exists.

### ii.      *Denying the Motion Would Prejudice Plaintiff*

Plaintiff filed this action in October 2021. (*Id.* ¶ 60.) Yet Defendants have repeatedly failed to comply with their discovery obligations or appear in court since 2023, resulting in sanctions. Aside from granting default judgment, Plaintiff has "no other means of vindicating [its] claim" against Defendants. *Peterson v. Boyarsky Corp.*, No. 08-1789, 2009 WL 983123, at *4 (D.N.J. Apr. 8, 2009). Thus, the Court concludes that denying default judgment would prejudice Plaintiff.

### iii.     *Defendants are Culpable*

Defendants are culpable for the default. As Judge Espinosa found, Defendants willfully disregarded Court Orders and abandoned their defense of this case. (*See* R&R at 14.) Devine,

16

likewise, "exhibited willful disregard for his discovery obligations." (*Id.*) And Defendants' conduct over the past three years "has done nothing but unacceptably impede any progress toward a resolution of the claims and defenses at issue in this action." (*Id.* at 10.)

### C.    Relief

Plaintiff seeks (1) a permanent injunction against Defendants using the marks "New Jersey Democratic Party" or "NJDEMS," or any other similar marks; (2) the seizure of the NJDEMS.com domain; and (3) attorneys' fees and costs. The Court considers each form of relief in turn.

#### i.    *Permanent Injunctive Relief*

The Lanham Act and New Jersey state law empowers courts to grant injunctive relief. *See* 15 U.S.C. § 1116; N.J.S.A. 56:4-2. A plaintiff seeking a permanent injunction must show: (1) it has suffered an "irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The Court may issue a permanent injunction in the context of a default judgment where these requirements are met." *E.A. Sween Co.*, 19 F. Supp. 3d at 576.

The Court finds Plaintiff has met all four requirements for a permanent injunction. First, because Defendants violated the Lanham Act, Plaintiff is "entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Moreover, Plaintiff would suffer irreparable injury if Defendants could continue using the "New Jersey Democratic Party" or "NJDEMS," as Plaintiff is the sole organization charged with setting the Party's platform and endorsing the Party's candidates. *See Kos Pharm.*, 369 F.3d at 726 (noting that "loss of control of reputation, loss of trade, and loss of good will" constitute irreparable injury). Second, money damages cannot remedy

17

the reputational injuries and confusion associated with Defendants being perceived as the New Jersey Democratic Party, "nor would it necessarily prevent, or even impede, future trademark infringement." *Chanel*, 133 F. Supp. 3d at 689. Third, the balance of hardships strongly favors an injunction. An injunction would only require Defendants to follow the law and stop using Plaintiff's marks. To the extent Defendants face any hardship, it is self-inflicted. However, without an injunction, Plaintiff would face "the hardships that gave rise to this litigation," such as loss of reputational control. *Id.* Finally, an injunction furthers the public's interest in protecting trademarks and avoiding voter confusion.

Accordingly, the Court **permanently enjoins** Defendants from using the marks "New Jersey Democratic Party" or "NJDEMS," or any other similar marks in any business activities.

### ii.    *Domain Name Forfeiture*

"In any civil action involving the registration, trafficking, or use of a domain name under [the ACPA], a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."15 U.S.C. § 1125(d)(1)(C). Because Defendants violated the ACPA, the Court **orders** the forfeiture of the NJDEMS.com domain.

### iii.    *Attorneys' Fees*

28 U.S.C. § 1117(c) permits the Court to award the prevailing party attorneys' fees in "exceptional cases." A case is exceptional "when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "Whether litigation positions or litigation tactics are 'exceptional' enough to merit attorneys' fees must be determined

18

by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Id.* (quoting *Octane Fitness*, 572 U.S. at 554).

Defendants' litigation conduct makes this an exceptional case. Plaintiff filed this default judgment motion because the Court sanctioned Defendants for repeatedly ignoring Orders, missing conferences, withholding discovery, and stonewalling depositions. Defendants' near-complete refusal to cooperate has dragged this case out for four years and forced Plaintiff to file a litany of motions to force Defendants to do what is expected of them. The Court, accordingly, concludes Plaintiff is entitled to recover attorneys' fees and expenses.[6] Within thirty (30) days of this Opinion and accompanying Order, Plaintiff shall file a motion for fees and expenses in accordance with Local Civil Rules 54.1 and 54.2.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment (ECF No. 162) is **GRANTED**.

DATED: 5/29/2026

**JULIEN XAVIER NEALS**
**United States District Judge**

---

[6] Devine argues that precedent from within this District and Circuit require the denial of Plaintiff's "excessive" fee petition. (Devine Opp'n at *5.) He puts the cart before the horse. Plaintiff has not yet filed a fee application, nor has the Court approved such an application. Rather, at this juncture, the Court merely holds that Plaintiff is entitled to attorneys' fees and costs and grants Plaintiff leave to itemize the same.

19